2024-1097

# United States Court of Appeals
# For the Federal Circuit

---

**GOOGLE LLC,**
*Plaintiff - Appellee,*

v.

**SONOS, INC.,**
*Defendant - Appellant.*

---

Appeal from the United States District Court for the Northern District of California
in No. 3:20-cv-06754-WHA and 3:21-cv-07559-WHA, Judge William H. Alsup

---

**CORRECTED BRIEF OF *AMICUS CURIAE***
**AMERICAN INTELLECTUAL PROPERTY LAW ASSOCIATION**
**IN SUPPORT OF NEITHER PARTY AND**
**REVERSAL OF THE PROSECUTION LACHES HOLDING**

---

ANN M. MUETING
  *President*
AMERICAN INTELLECTUAL PROPERTY
  LAW ASSOCIATION
MRG IP LAW, P.A.
111 Washington Avenue South
Suite 700
Minneapolis, MN 55401
Tel.: (612) 305-1217
amueting@mrgiplaw.com

GENEVIEVE M. HALPENNY
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
Tel: (315) 425-2890
Fax: (315) 425-2701
ghalpenny@barclaydamon.com

*Counsel for Amicus Curiae American
Intellectual Property Law Association*

March 5, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**    24-1097

**Short Case Caption**    Google LLC v. Sonos, Inc.

**Filing Party/Entity**    American Intellectual Property Law Association

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/05/2024

Signature:    /s/ Genevieve M. Halpenny

Name:    Genevieve M. Halpenny

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| American Intellectual Property Law Association | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☐  No    ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS ...................................................................... iv

TABLE OF AUTHORITIES ................................................................. v

STATEMENT OF INTEREST OF *AMICUS CURIAE* ....................... viii

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ...................................................................................... 3

    I.    Prosecution Laches Has Historically Required Egregious Conduct Causing Delay And Prejudice ......................................... 3

        A.    Early Supreme Court Decisions Emphasized Preventing Egregious Delays In Patent Issuance That Extend Patent Term ............................................. 3

        B.    The Federal Circuit Also Applied Prosecution Laches To Address Egregious Extensions Of Patent Term ......................... 6

        C.    Delay Is Evaluated In Relation To The Prejudice Caused By That Delay ................................................... 8

        D.    Prosecution Laches Should Apply Only In The Rarest Of Post-GATT Cases ..................................................... 10

    II.    The District Court's Analysis Of Prosecution Laches Was Flawed ... 12

        A.    The District Court's Discussion Of Delay Is Insufficient ........ 12

        B.    The District Court's Analysis Threatens Ordinary Patent Prosecution ................................................................. 13

        C.    The District Court Erroneously Conflates Prosecution Laches With Other Doctrines ............................................. 16

    III.    Prosecution Laches Should Be Proven By Clear And Convincing Evidence ...................................................... 19

CONCLUSION .................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*BlephEx, LLC v. Myco Indus.*,
   24 F.4th 1391 (Fed. Cir. 2022) .................................................................19 n.5

*In re Bogese*,
   303 F.3d 1362 (Fed. Cir. 2002) .........................................................................6

*Cancer Rsch. Tech. Ltd. v. Barr Lab'ys., Inc.*,
   625 F.3d 724 (Fed. Cir. 2010) ...................................................................*passim*

*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*,
   2017 WL 345991 (E.D. Tex. Jan. 24, 2017) ...............................................11 n.4

*Cordance Corp. v. Amazon.com, Inc.*,
   631 F. Supp. 2d 484 (D. Del. 2009)...........................................................11 n.4

*Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*,
   304 U.S. 159 (1938)............................................................................................9

*Eli Lilly & Co. v. Hospira, Inc.*,
   933 F.3d 1320 (Fed. Cir. 2019) .......................................................................18

*Finjan, Inc. v. Juniper Network, Inc.*,
   2018 WL 4181905 (N.D. Cal. Aug. 31, 2018) .....................................11 n.4, 13

*Gen. Talking Pictures Corp. v. W. Elec. Co.*,
   304 U.S. 175 (1938)............................................................................................9

*Gilead Scis., Inc. v. Merck & Co.*,
   888 F.3d 1231 (Fed. Cir. 2018) .......................................................................16

*In re Henriksen*,
   399 F.2d 253 (C.C.P.A. 1968) .........................................................................13

*Hyatt v. Hirshfeld*,
   998 F.3d 1347 (Fed. Cir. 2021) .................................................................*passim*

*Intuitive Surgical, Inc. v. Comput. Motion, Inc.*,
   2002 WL 31833867 (D. Del. Dec. 10, 2002) ...................................................12

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
   863 F.2d 867 (Fed. Cir. 1988) ....................................................19 n.5

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)..........................................................................20

*Miller v. Bridgeport Brass Co.*,
   104 U.S. 350 (1881)........................................................................17

*Natera, Inc. v. ArcherDX, Inc.*,
   2023 WL 5705962 (D. Del. Sept. 5, 2023)..................................11 n.4

*Personalized Media Commc'ns., LLC v. Apple, Inc.*,
   552 F. Supp. 3d 664, 684-85 (E.D. Tex. 2021) ................................19

*Personalized Media Commc'ns., LLC v. Apple Inc.* (*PMC*),
   57 F.4th 1346 (Fed. Cir. 2023) .....................................................8, 19

*Radio Corp. of Am. v. Radio Eng'g Lab'ys., Inc.*,
   293 U.S. 1 (1934)............................................................................20

*Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found., LP*,
   422 F.3d 1378, 1386 (Fed. Cir. 2005) ......................................*passim*

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ......................................................21

*United States v. Am. Bell Tel. Co.*,
   167 U.S. 224 (1897)...........................................................5, 6, 12, 20

*Webster Elec. Co. v. Splitdorf Elec. Co.*,
   264 U.S. 463 (1924)...........................................................4, 5, 11, 15

*Woodbridge v. United States*,
   263 U.S. 50 (1923).....................................................................*passim*

**Statutes**

35 U.S.C. § 121 .................................................................................14

35 U.S.C. § 122 .........................................................................10 n.3

35 U.S.C. § 251 .................................................................................17

Domestic Publication of Foreign Filed Patent Applications Act of
1999, Pub. L. No. 106-113, 113 Stat. 1501A-561–562 (1999).....................10 n.3

**Other Authorities**

M.P.E.P. § 607 ........................................................................................................14

M.P.E.P. § 1122 ......................................................................................................10

P.J. Federico, *Commentary on the New Patent Act*, 75 J. Pat. &
Trademark Off. Soc'y 161, 177 (1993) ..............................................................17

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The American Intellectual Property Law Association ("AIPLA") is a national bar association representing the interests of approximately 7,000 members engaged in private and corporate practice, government service, and academia. AIPLA's members represent a diverse spectrum of individuals, companies, and institutions involved directly or indirectly in the practice of patent, trade secret, trademark, and copyright law, as well as other fields of law relating to intellectual property. AIPLA's members represent both owners and users of intellectual property. AIPLA's mission includes providing courts with objective analyses to promote an intellectual property system that stimulates and rewards invention, creativity, and investment while accommodating the public's interest in healthy competition, reasonable costs, and basic fairness. AIPLA has no stake in either of the parties to this litigation or in the result of this case.[1] AIPLA's only interest is in seeking correct and consistent interpretation of the law as it relates to intellectual property issues.

AIPLA states that, pursuant to Federal Rule of Appellate Procedure 29(a)(2), all parties consented to the filing of this brief.

---

[1] No person, party, or party's counsel, other than AIPLA or its counsel, authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief.

# SUMMARY OF ARGUMENT

AIPLA seeks clarity on what constitutes an unreasonable and inexcusable delay in prosecuting patent applications when applying the doctrine of prosecution laches. AIPLA fears that the district court's treatment of the laches defense, if applied in other cases, could encroach upon the statutory rights of patent applicants to file continuation or divisional applications within the 20-year patent term. AIPLA takes no position on the validity or enforceability of the patents asserted in this case.

Prosecution laches is rooted in curbing abusive prosecution practices that led to an unwarranted extension of the patent term. The General Agreement on Tariffs and Trade (GATT) largely addressed that issue by setting a patent term based on the initial application filing—not later issuance as a patent. Now, delay in prosecuting a patent application typically has no impact on the expiration date of the patent. As a result, post-GATT applications do not raise the same concern as pre-GATT applications. Thus, assuming prosecution laches still applies post-GATT, any finding of an unreasonable and inexcusable delay should be reserved for only the rarest of cases.

In the present case, the district court found unreasonable and inexcusable delay where 13 years had elapsed between the provisional patent application and presenting the claims at issue. In doing so, the district court dismissed the patentee's diligence in prosecuting other applications and suggested the patentee should have

presented all of its claims at once in one or more patent applications. However, patent applicants regularly pursue serial patent applications, for example, to save the costs associated with pursuing all implementations of an invention in a single application. Thus, the time between filing a priority application and presenting a particular claim for examination (13 years in this case) does not necessarily reflect true delay in prosecution.

Notably, the district court also relied on facts that are unrelated to prosecution delay. For example, the district court found the patentee *added new matter* in a continuation application and hid its addition from the Patent Office and the district court. The district court found the patentee did so after seeing the defendant's product plans in confidential meetings. If proven, these facts could lead to findings of invalidity for lack of written description or unenforceability for unclean hands, issues over which AIPLA expresses no opinion. But they do not show delay, much less unreasonable and inexcusable delay. Indeed, the patentee could not have delayed in prosecuting claims on subject matter it *did not possess* until later.

The district court's order could be detrimental to standard continuation practice. AIPLA advocates for flexible continuation practice during the statutory term, assuming of course that the applicant satisfies all of the statutory requirements. The Federal Circuit should clarify how to determine the length of any delay, whether such delay is unreasonable and inexcusable, and whether any prejudice was caused

by the delay. The Federal Circuit should also clarify that the burden of proof is clear and convincing evidence, in accordance with long-standing Supreme Court precedent. Doing so will greatly help the district courts in consistently applying the prosecution laches doctrine.

**ARGUMENT**

**I.** **Prosecution Laches Has Historically Required Egregious Conduct Causing Delay And Prejudice**

**A.** **Early Supreme Court Decisions Emphasized Preventing Egregious Delays In Patent Issuance That Extend Patent Term**

Prosecution laches finds its roots in two Supreme Court decisions from the 1920s—when any delay in prosecuting a patent application would postpone issuance and, as a result, both the start and expiration date of the patent term. During this period, the patent term began on the date of issuance. *Woodbridge v. United States*, 263 U.S. 50, 55 (1923) (explaining the congressional history of various statutory patent terms, all of which commenced from date of issuance).

In 1923, in *Woodbridge*, the Supreme Court affirmed the findings by the Court of Claims that Woodbridge had forfeited his patent rights by purposely and secretly delaying patent issuance for over eight years. *Id*. at 52. Woodbridge amended his claims to a rifled cannon to place them in condition for allowance but requested that the PTO maintain his application in its secret archives. *Id*. At that time, the

maximum term for keeping the application secret in the archives was one year.[2]  But Woodbridge waited nine-and-a-half years and then requested issuance.  *Id.*  In his request, Woodbridge told the Patent Office that he now had an "immediate opportunity" to gain "pecuniarily."  *Id.* at 53.  Woodbridge saw an opportunity with the advent of the Civil War.  *Id.*  In the meantime, "other inventors had been at work in the same field and had obtained patents without knowledge of the situation with respect to Woodbridge's invention."  *Id.* at 54.

In detailing Congress' enactment of the various patent terms, the Court explained that Congress always intended for the term to run from the patent's issuance and, at the term's end, the public would gain the benefit of the invention.  *Id*. at 55.  By his purposeful delay—preventing an allowed application to issue—Woodbridge postponed "the time when the public could freely enjoy [the invention] for nearly 10 years."  *Id*. at 56.  The Court concluded that Woodbridge forfeited his claims by "delay or laches."  *Id*. at 56-57.

In 1924, the Supreme Court affirmed a laches finding in another patent case where the applicant presented new and broader claims in a divisional application filed eight years after his original application.  *Webster Elec. Co. v. Splitdorf*

---

[2] The Court observed Woodbridge apparently made this request under Section 8 of the Act of July 4, 1836, 5 Stat. 121, which allowed applicants to file the specification and drawings "in the secret archives of the office until he shall furnish the model and the patent be issued, not exceeding the term of one year. . . ."

*Elec. Co.*, 264 U.S. 463, 465-66 (1924). During the time of delay, the subject matter of the claims "was disclosed and in general use" and the applicant "simply stood by and awaited developments." *Id.* at 465. The Supreme Court explained this was not "the simple case of a division of a single application for several independent inventions, but with a case of unreasonable delay and neglect on the part of the applicant and his assignee in bringing forward claims broader than those originally sought." *Id.* at 465-66 (internal citation omitted). The Court again focused on patent term extension, explaining "the law shall not be so loosely construed and enforced as to subvert its limitations, and bring about an undue extension of the patent monopoly against private and public rights." *Id.* at 466.

In contrast, the Supreme Court had declined to find a patent unenforceable where the evidence did not show the applicant was at fault for a thirteen-year delay in prosecution before the Patent Office. *United States v. Am. Bell Tel. Co.*, 167 U.S. 224, 243, 263 (1897) (referred to as the "Berliner Case"). The Court explained why determining who was at fault was critical. *Id.* at 246 ("if the delay is caused solely through the negligence or inattention of the tribunal before which the application is pending it is something for which the applicant is not responsible, and which does not affect his legal rights"). The Court analyzed the patent prosecution history in detail and found no "delay or postponement was made at the instance or on the

suggestion of the applicant." *Id.* at 259. The Court rejected the Government's attempt to cancel the patent for failing to meet its heavy burden of proof. *Id.*

## B. The Federal Circuit Also Applied Prosecution Laches To Address Egregious Extensions Of Patent Term

The Federal Circuit has also applied prosecution laches in cases that resulted in egregious patent term extension. This Court affirmed an examiner's finding of prosecution laches where the applicant spent eight years engaging in a "deliberate and consistent course of conduct that has resulted in an exceptional delay in advancing the prosecution and the issuance of a patent." *In re Bogese*, 303 F.3d 1362, 1365 (Fed. Cir. 2002). For twelve applications in a row, Bogese abandoned the application in response to a rejection and filed a continuation without amendment or attempting to address the rejection. *Id.* at 1363-65.

The patent examiner eventually rejected all pending claims because Bogese "deliberately postponed meaningful prosecution, deliberately postponed the grant of any patent to which he may be entitled, and deliberately postponed the free public enjoyment of any invention on which a patent may have issued." *Id.* at 1365. This Court affirmed the Board's finding which explained that the applicant also knew during the delay that "[articles] embodying [his] invention were being developed and exploited commercially in the market place." *Id.* at 1366.

In *Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found., LP*, 422 F.3d 1378, 1386 (Fed. Cir. 2005) (*Symbol Techs. II*), this Court affirmed a district court's

finding of prosecution laches based on 18- to 39-year delays in filing and prosecuting the asserted claims in conjunction with other prosecution misconduct. *Id.* The applicant engaged in "culpable neglect" during prosecution, resulting in harm to third parties that were unable to determine the scope of patented subject matter. *Id.* The district court noted that the applicant's patents occupied the "top thirteen positions" for the longest prosecutions from 1914 to 2001. *Id.*

In *Hyatt v. Hirshfeld*, a single applicant filed 381 patent applications in the days leading up to the GATT rule change, eventually totaling more than 115,000 claims. *Hyatt v. Hirshfeld,* 998 F.3d 1347, 1367 (Fed. Cir. 2021). The Court found that "Hyatt adopted an approach to prosecution that all but guaranteed indefinite prosecution delay" by making it "effectively impossible for the PTO to process them." *Id.* at 1368. Among other things, Hyatt stressed examination by "filing amendments adding hundreds of claims to each application, effectively starting examination from the beginning." *Id.* Hyatt also engaged "in a pattern of rewriting claims entirely or in significant part midway through prosecution, thereby, again, restarting examination." *Id.* The PTO spent $10 million on an entire art unit dedicated to Hyatt's applications, but still was unable to keep up. *Id.* at 1370. The PTO estimated the art unit would take 532 years to examine Hyatt's "roughly 400 applications, during which it could complete over 40,000 typical applications." *Id.* at 1370-71. The Court "conclude[d] that no reasonable explanation has been shown

to justify Hyatt's prosecution approach." *Id.* at 1369. The Court thus found a "clear abuse of the PTO's patent examination system" with regard to the four applications at issue. *Id.* at 1370.

The Federal Circuit also affirmed a finding of prosecution laches where the patentee did not present the subject matter at issue until sixteen years after the priority date. *See Personalized Media Commc'ns., LLC v. Apple Inc.* (*PMC*), 57 F.4th 1346, 1355 (Fed. Cir. 2023). PMC also made it "virtually impossible for the PTO to conduct double patenting, priority, or written description analyses." *Id.* at 1356. The PTO adopted "atypical procedures" to manage examination of PMC's applications. *Id.* at 1354. The Court found "PMC institutionalized its abuse of the patent system by expressly adopting and implementing dilatory prosecution strategies" to "ambush" defendants "many years after PMC filed its applications." *Id.* at 1354.

In each of the above Supreme Court and Federal Circuit cases, the applicant frustrated—for a long period of time—the Patent Office's ability to examine the application or issue any patent therefrom. And each application at issue was entitled to a priority date that preceded GATT.

### C. Delay Is Evaluated In Relation To The Prejudice Caused By That Delay

Supreme Court and Federal Circuit caselaw also demonstrates that any delay must be evaluated in relation to the prejudice caused by the delay. *See Cancer Rsch.*

*Tech. Ltd. v. Barr Lab'ys., Inc.*, 625 F.3d 724 (Fed. Cir. 2010). In *Cancer Rsch.*, the defendant argued that "it was unreasonable to file identical continuation applications, abandonments, and requests for extension of time for nine years without any attempt to substantively advance prosecution until it became commercially advantageous to do so." *Id.* at 729.

Despite the nine-year delay and extended term from a pre-GATT application, this Court declined to apply laches because "the delay had only limited consequences to [the defendant] and the public." *Id.* at 731. The Court examined *Woodbridge*, *Webster*, and two other 1938 Supreme Court cases on the subject. *Id.* at 730. The Court concluded the 1938 cases "held that in the absence of intervening rights, no excuse is necessary for a delay in presenting new claims in a continuation or divisional application." *Id.* (citing *Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159 (1938); *Gen. Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175, 193 (1938)). The Court reversed the district court's finding of prosecution laches because the delay did not result in prejudice to companies that "developed or invested" in products covered by the patent during the delay. *Id.* at 732.

Prejudice will normally arise when the defendant could not have predicted the applicant would claim a particular invention. When patent prosecution was done in

secret, as in all of the pre-GATT cases discussed above,[3] claims of surprise could be more readily justified. Today, patent applications are published eighteen months after filing unless an applicant specifically requests non-publication. *See* 35 U.S.C. § 122. And even when an applicant requests non-publication, the patent prosecution history will publish upon issuance of the first patent in the continuity chain. *See* M.P.E.P. § 1122. Thus, any secret prosecution is limited. It may be difficult for defendants to claim prejudice or surprise when the prosecution is done openly for public inspection.

### D. Prosecution Laches Should Apply Only In The Rarest Of Post-GATT Cases

The Court in *Cancer Rsch.* expressly explained "the facts of this case are not likely to be frequently repeated" post-GATT because "patent terms are now measured from effective filing date" with limited extensions. *Cancer Rsch. Tech. Ltd.*, 625 F.3d at 732. The dissent would have applied prosecution laches due to the inherent extension of patent term pre-GATT. *Id.* at 736 (Prost, J., dissenting). In particular, the dissent explained the "improper extension of the patent monopoly, including the accompanying market uncertainty and denial to the public of free use of the invention, is sufficient prejudice to justify the use of an equitable defense."

---

[3] Patent applications were not published until 35 U.S.C. § 122 was enacted in November 1999 (four years after GATT). *See* Domestic Publication of Foreign Filed Patent Applications Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501A-561–562 (1999).

*Id.* at 736. Thus, both the majority and dissent in *Cancer Rsch.* focused on extension of the patent term for pre-GATT applications.

As discussed, the original Supreme Court cases similarly emphasized the importance of patent term extension. In *Woodbridge*, the Supreme Court explained that the patentee's scheme would have extended the patent term by thirteen years. *Woodbridge*, 263 U.S. at 58-59 (term would have been extended from 1866 to 1879). In *Webster*, the Supreme Court explained that patentees should not be allowed to "bring about an undue ***extension*** of the patent monopoly against private and public rights." *Webster Elec. Co.*, 264 U.S. at 466 (emphasis added).

AIPLA was unable to find any case (other than the district court decision here) that found prosecution laches for a post-GATT patent. The first patents that issued from post-GATT applications expired nearly a decade ago. The absence of cases applying prosecution laches to post-GATT patents suggests the change in patent term largely curtailed the abuses that prosecution laches was intended to remedy. Without the possibility of patent term extension by dilatory prosecution, prosecution laches should be reserved for only the rarest of post-GATT cases.[4]

---

[4] AIPLA found cases raising prosecution laches for post-GATT patents, but the defense was unsuccessful. *See e.g.*, *Natera, Inc. v. ArcherDX, Inc.*, 2023 WL 5705962, *8-9 (D. Del. Sept. 5, 2023); *Finjan, Inc. v. Juniper Network, Inc.*, 2018 WL 4181905, at *3 (N.D. Cal. Aug. 31, 2018); *Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, 2017 WL 345991, *4-5 (E.D. Tex. Jan. 24, 2017); *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 484, 492 n.38 (D. Del. 2009).

Moreover, in a post-GATT environment, the courts must use greater precision in calculating the length of any delay. The delay must be the period where the applicant frustrated the advancement of the prosecution for no legitimate reason, such as by repeatedly declining to allow patents to issue after receiving notices of allowance. Properly calculating delay may require the court to examine the prosecution history to determine whether any delay was caused by the applicant or by the Patent Office. As one district court explained, "[a]lthough this court considers a nine year delay extended, the court must examine the prosecution history of the patent to determine if the delay is both unreasonable and unexplained." *Intuitive Surgical, Inc. v. Comput. Motion, Inc.*, 2002 WL 31833867, at *4 (D. Del. Dec. 10, 2002) (analyzing the reasons for three separate periods of delay during prosecution). Such an analysis is consistent with the analysis performed by the Supreme Court over 100 years ago. *See Woodbridge*, 263 U.S. at 62-63 (discussing *Am. Bell*).

## II.     The District Court's Analysis Of Prosecution Laches Was Flawed

### A.     The District Court's Discussion Of Delay Is Insufficient

The district court measured delay simply by counting thirteen years between the filing of the provisional patent application and presenting the claims at issue here. *See* Appx80. There are at least two problems with that approach. First, as explained above, prosecution laches precedent applying that sort of simple calculation did so because such purported "delay" extended the patent term. That

analysis no longer applies to post-GATT filings.  *See Finjan, Inc. v. Juniper Network, Inc.*, 2018 WL 4181905, at *3 (N.D. Cal. Aug. 31, 2018) (dismissing defense based on the "mere recitation of the number of years that lapsed between the time Finjan filed its [post-GATT] application for the parent patent and the applications for the four patents at issue here" and "conclusory statements" of reasonableness).

Second, the district court ignores the difference between an applicant who (a) is diligently prosecuting continuation applications and (b) an applicant who is actively attempting to prevent any patent from issuing (i.e., true delay).  Within the statutory term, the patentee should be entitled to pursue claims that capture the full scope of its disclosure in series.  *See In re Henriksen*, 399 F.2d 253, 254 (C.C.P.A. 1968) ("there is no statutory basis for fixing an arbitrary limit to the number of prior applications through which a chain of copendency may be traced to obtain the benefit of the filing date of the earliest of a chain of copending applications, provided applicant meets all the other conditions of the statute.").  As explained in detail below, there are many ordinary and legitimate reasons why an applicant may present claims many years after the initial priority application.

### B.  The District Court's Analysis Threatens Ordinary Patent Prosecution

The district court's application of prosecution laches threatens to further engulf legitimate patent prosecution, practices that are indisputably permissible

under the Patent Act and USPTO rules. The district court held that "diligently prosecut[ing] patent applications in the interim does not render the delay any less unreasonable and inexcusable." Appx81. According to the district court, it actually "renders the delay *all the more* unreasonable and inexcusable." *Id.* (emphasis added). The district court based its holdings on how it thinks prosecution should proceed:

> At all relevant times in the more than thirteen years it took for Sonos to present its claims, Sonos had related applications on file. It would have been a small step for Sonos to amend those applications to claim the invention. Likewise, nothing prevented Sonos from filing parallel applications with new claims covering the invention. Sonos did not have to run out its string of inert applications before turning to claim the invention that mattered. Indeed, Sonos already had an application pending (for the '532 patent) when it filed the applications for the patents in suit.

*Id.*

The district court's analysis ignores the inherent benefits conferred by the statutory right to file continuation applications in patent prosecution. In most cases, it is not feasible to claim all embodiments and all implementations of an invention in a single application. Doing so would result in exorbitant excess claim fees. *See* M.P.E.P. § 607. It would also make the application nearly impossible for the examiner to review. Indeed, that is the very purpose for restriction requirements. 35 U.S.C. § 121 ("If two or more independent and distinct inventions are claimed in

one application, the Director may require the application to be restricted to one of the inventions").

The cost of pursuing numerous applications in parallel would also be prohibitive for many patent applicants, particularly small and medium sized entities. Few companies have the resources to pursue all patentable subject matter at once. Applicants need to prioritize which claims to pursue, often by making educated guesses as to which of many embodiments in a disclosure will be commercially relevant. And many entities need to obtain initial patent protection to generate enough funding from investors so that they can afford to pursue additional applications.

This Court has recognized the many "legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated." *Symbol Techs. II*, 422 F.3d at 1385; *see also Webster Elec. Co.*, 264 U.S. at 465-66 ("We are not here dealing, therefore, with the simple case of a division of a single application for several independent inventions"). The Court has identified examples of reasonable delays, including:

> (i) filing a divisional application in response to a restriction requirement, even if the filing occurs immediately before issuance of the parent application; (ii) refiling an application to present new evidence of an invention's unexpected advantages; and (iii) refiling an application "to add subject matter in order to attempt to support broader claims as the development of an invention progresses."

*Hyatt*, 998 F.3d at 1361-62 (quoting *Symbol Techs. II*, 422 F.3d at 1385). "[T]hese examples are not exhaustive" and "an applicant could reasonably refile an application where that refiling 'is not unduly successive or repetitive.'" *Id.* at 1362 (quoting *Symbol Techs. II*, 422 F.3d at 1385). Other examples would include withdrawing a patent from issuance to submit additional prior art for the Patent Office to consider. Such acts should be lauded for complying with an applicant's duty of candor—not villainized as prosecution laches.

### C. The District Court Erroneously Conflates Prosecution Laches With Other Doctrines

The district court's prosecution laches analysis relies on many facts that, while perhaps dubious, simply do not constitute delay in prosecution. For example, the district court found that "five years before Sonos filed the applications and presented the claims, accused infringer Google LLC shared with Sonos a plan for a product that would practice what would become the claimed invention." Appx52; *see also id.* at 18-21, 33. Such facts, if proven, could lead to a finding of unclean hands. *See Gilead Scis., Inc. v. Merck & Co.*, 888 F.3d 1231, 1244 (Fed. Cir. 2018) (affirming unclean hands defense where patentee used information obtained from confidential business communications and then misrepresented facts during litigation). But they simply are not relevant to calculating the period of any delay in preventing applications to issue as patents.

The district court below also found prejudice because the claims of the later application were not supported by the earlier priority applications. Appx83 ("it turns out that the earlier applications *never disclosed the invention*"). These facts may render the patent invalid, but do not support a finding of prosecution delay. Indeed, the district court relied on the same findings to also invalidate the patents. *See* Appx105 ("What's more, they are anticipated by the accused products themselves on account of new matter having been inserted into the specification and are thus INVALID.").

The district court also analogized Sonos' conduct to an 1881 case addressing laches in the special circumstances of a broadening reissue application before the enactment of the 1952 act authorizing such applications. Appx86 (quoting *Miller v. Bridgeport Brass Co.,* 104 U.S. 350, 353 (1881)); *see also* P.J. Federico, *Commentary on the New Patent Act*, 75 J. Pat. & Trademark Off. Soc'y 161, 177 (1993) (Federico's Commentary) at 44 (explaining the history behind the new broadening reissue statute). In *Miller*, the Court explained that the "evils which have grown from the [unauthorized broadening reissue] practice have assumed large proportions." *Miller,* 104 U.S. at 355. Thus, the Court found that "in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied…." *Id.* at 356.

The case here involves a continuation application, not an unauthorized broadening reissue application. Whereas reissue applications require mistakes or errors in an issued patent under 35 U.S.C. § 251, continuation and divisional applications require no such mistakes or errors and simply continue ongoing prosecution.

The district court also cited *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1334 (Fed. Cir. 2019), for the proposition that "subject matter disclosed by a patentee, but not claimed, is considered dedicated to the public." Appx81. But that is inconsistent with precedent from this Court, which explained:

> The reason for the doctrine is that members of the public reading a disclosure of particular subject matter are entitled, absent a claim to it, to assume that it is not patented and therefore dedicated to the public (***unless, for example, claimed in a continuation or other application based on the disclosure***).

*Eli Lilly & Co.*, 933 F.3d at 1333 (emphasis added).

The district court acknowledged the above exception to the disclosure-dedication rule for continuation applications but dismissed it by taking quotes out of context from other cases. *See* Appx81 (quotations omitted) (citing *Hyatt,* 998 F.3d at 1361; *Symbol Techs. II,* 422 F.3d at 1386). The quote from *Symbol Techs. II* referred to a specific "18- to 39-year" delay that made the patentee's patents ranked in the "top thirteen positions for the longest prosecutions." *Hyatt,* 998 F.3d at 1361 (quotation omitted). As explained above, *Hyatt* and *Symbol Techs. II* presented

unique and challenging facts.  Neither case said anything about the disclosure-dedication rule for continuation applications, so they do not support the district court's dismissal of this important exception.  One simply cannot conclude that subject matter has been dedicated to the public if continuation applications are still pending.[5]

## III.  Prosecution Laches Should Be Proven By Clear And Convincing Evidence

The district court acknowledged the "Federal Circuit has not expressly clarified an accused infringer's burden of proof for prosecution laches…." Appx79.  However, this Court has affirmed a district court decision applying the clear and convincing evidence standard to prosecution laches.  *See Personalized Media Commc'ns., LLC v. Apple, Inc.*, 552 F. Supp. 3d 664, 684–85 (E.D. Tex. 2021), *aff'd*, 57 F.4th 1346 (Fed. Cir. 2023).  This Court should now take the opportunity to expressly clarify that prosecution laches must be proven by clear and convincing evidence.

---

[5] This Court has explained "there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market."  *See BlephEx, LLC v. Myco Indus.*, 24 F.4th 1391, 1404 (Fed. Cir. 2022) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 874 (Fed. Cir. 1988)).  The district court recognized this principle.  *See* Appx82.  Like any other patent applicant, Sonos would have been free to write claims directed to competitive products if the claims had written description support in the priority application.

In *Woodbridge*, the Supreme Court explained that it had long required "clear and convincing proof" to cancel a patent for prosecution delays. *Woodbridge*, 263 U.S. at 62-63 (citing *Am. Bell*, 167 U.S. 224). The Court explained that *Am. Bell* found against the Government because it failed to meet its burden to "cancel by clear and convincing proof." *Id.* at 63. The *Am. Bell* court explained that canceling a patent for wrongful conduct required proof "which is clear, convincing, and satisfactory." *Am. Bell*, 167 U.S. at 263; *see also id.* at 241 (analogizing to equitable action to "correct a written instrument for fraud or mistake," which requires "clear, unequivocal, and convincing" evidence and "cannot be done upon a bare preponderance of evidence which leaves the issue in doubt").

The analysis in *Woodbridge* was very similar to the Supreme Court's later analysis and conclusion that the clear and convincing evidence standard applies to patent validity. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). The *i4i* Court similarly explained that it had long held the presumption of validity for an issued patent was "not to be overthrown except by clear and cogent evidence." *Id.* at 101 (citing *Radio Corp. of Am. v. Radio Eng'g Lab'ys., Inc.*, 293 U.S. 1, 55 (1934)). The Court reasoned that any "re-calibration of the standard of proof remains in [Congress'] hands." *Id.* at 114. The same is true here, where the Supreme Court long ago identified the standard of proof for unenforceability due to prosecution delays. *See Woodbridge*, 263 U.S. at 62-63.

The district court correctly observed that clear and convincing evidence is the standard required for other unenforceability defenses, such as inequitable conduct. *See* Appx79 (citing *Cancer Rsch.*, 625 F.3d at 729). This Court explained that "the remedy for inequitable conduct is the 'atomic bomb' of patent law" in part because it renders the entire patent—not just specific claims—unenforceable. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011). The same analysis applies to prosecution laches.

Accordingly, AIPLA submits the evidentiary standard for prosecution laches should be clear and convincing evidence.

## CONCLUSION

AIPLA urges this Court to confirm that, to the extent that prosecution laches applies to post-GATT patents, any finding of an unreasonable and inexcusable delay should be applied in only the rarest of cases. AIPLA also urges the Court to clarify how to determine the length of any delay, whether such delay is unreasonable and inexcusable, and whether any prejudice was caused by the delay. Finally, AIPLA urges the Court to confirm that the standard of proof for prosecution laches is clear and convincing evidence.

March 5, 2024

Respectfully submitted,

AMERICAN INTELLECTUAL PROPERTY
LAW ASSOCIATION

By its attorneys,

/s/ Genevieve M. Halpenny
GENEVIEVE M. HALPENNY
BARCLAY DAMON LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202
Tel: (315) 425-2890
Fax: (315) 425-2701
ghalpenny@barclaydamon.com

ANN M. MUETING
    *President*
AMERICAN INTELLECTUAL PROPERTY
    LAW ASSOCIATION
MRG IP LAW, P.A.
111 Washington Avenue South
Suite 700
Minneapolis, MN 55401
Tel.: (612) 305-1217
amueting@mrgiplaw.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 24-1097

**Short Case Caption:** Google LLC v. Sonos, Inc.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __5,536__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __03/05/2024__

Signature: __/s/ Genevieve M. Halpenny__

Name: __Genevieve M. Halpenny__