No. 24-1097

# United States Court of Appeals
# for the Federal Circuit

_____

**GOOGLE LLC,**

*Plaintiff-Appellee*

v.

**SONOS, INC.,**

*Defendant-Appellant*

---

Appeal from the United States District Court for the Northern District of California,
No. 3:22-cv-06754-WHA and 3:21-cv-07559-WHA, Judge William H. Alsup

---

### CORRECTED BRIEF OF *AMICUS CURIAE* ALLIANCE OF U.S. STARTUPS & INVENTORS FOR JOBS ("USIJ") SUPPORTING APPELLANT SONOS, INC. AND REVERSAL OF PROSECUTION LACHES

---

Robert P. Taylor
**RPT LEGAL STRATEGIES PC**
2443 Fillmore Street
Suite 332
San Francisco, California 94115
650.400.6995
robert.taylor@rptstrategies.com

Meredith Martin Addy
**ADDYHART P.C.**
10 Glenlake Parkway
Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com

February 20, 2024

*Attorneys for Amicus Curiae USIJ*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-1097 |
| **Short Case Caption** | Google LLC v. Sonos, Inc. |
| **Filing Party/Entity** | Alliance of U.S. Startups & Inventors For Jobs |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/22/2024

Signature: /s/ Meredith Martin Addy

Name: Meredith Martin Addy

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Alliance of U.S. Startups & Inventors For Jobs | **See attached | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☐  No    ☑  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |



<u>Appendix A</u>

*USIJ Member Companies*

- Aegea Medical
- BioCardia
- DivX, LLC
- EarLens Corporation
- ExploraMed
- Fogarty Institute for Innovation
- ForSight Labs, LLC
- Headwater Research
- Lauder Partners, LLC
- Materna Medical
- MedicalCue
- Moximed
- Original Ventures
- Pavey Investments
- Precision Biopsy
- Prescient Surgical
- Puracath Medical
- Rearden Studios
- Siesta Medical
- Soraa
- Tallwood Venture Capital
- The Foundry

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF AUTHORITIES ............................................................ vi

STATEMENT OF INTEREST OF THE *AMICUS CURIAE* .................................. 1

SUMMARY OF THE ARGUMENT ................................................... 2

ARGUMENT ................................................................. 5

I.     Congress, the Courts, and the USPTO Already Have Addressed Proper Continuation Practice ........................................................ 5

    A.     The 1995 Patent Law Amendments Eliminated Abusive Use of Continuations and Any Need for Prosecution Laches ........................ 5

    B.     Responding to USPTO Proposed Rulemaking, this Court has Already Established that Limiting Continuation Practice is too Restrictive .............................................................. 9

II.    Small Companies, Startups, and Sole Inventors Rely on Continuation Practice in order to be Competitive Against their Larger Incumbents ......... 11

III.   The District Court's Decision will Require Patent Applicants to Attempt to Prosecute All Disclosed Inventions Simultaneously ........................ 14

IV.    Declines in the Certainty of Patent Protection have Fostered Declines Investments in Technology Startups for More Than a Decade. .................... 16

CONCLUSION ................................................................. 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ....................................................... a

# TABLE OF AUTHORITIES

**Cases**

*Hyatt v. Hirchfeld*,
  998 F.3d 1347 (Fed. Cir. 2021) ...............................................................6

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
  57 F.4th 1346 (Fed. Cir. 2023) .............................................................6

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
  580 U.S. 328 (2017).............................................................................11

*Tafas v. Doll*,
  559 F.3d 1345 (Fed. Cir. 2009) ............................................... 10, 11, 19

*Woodbridge v. United States*,
  263 U.S. 50 (1923).................................................................................5

**Statutes**

35 U.S.C. § 111(b) .....................................................................................19

35 U.S.C. § 120...........................................................................................11

35 U.S.C. § 122(b) .......................................................................................7

35 U.S.C. § 154 ............................................................... 6, 7, 12, 19

35 U.S.C. § 286...........................................................................................12

General Agreement on Tariffs and Trade ("GATT"), Uruguay Round,
  Public Law 103-465, sec. 532(a)(1), 108 Stat. 4983 (1994) ................7

**Rules**

37 C.F.R. § 1.705 .......................................................................................19

37 C.F.R. § 1.78(d)(1)(vi)...........................................................................10

## Other Authorities

Burnham Institute for Medical Research Comments on Notice of Proposed
Rulemaking, May 3, 2006,
https://www.uspto.gov/patents/laws/comments-public/comments-
regarding-continuation-practice ................................................................. 12, 13

California Healthcare Institute's Comments to Notice of Proposed
Rulemaking ("CHI Comments"), May 1, 2006,
https://www.uspto.gov/patents/laws/comments-public/comments-
regarding-continuation-practice ................................................................. 11, 12

Dlouhy, Jennifer, How Cina Beat the U.S. to Become World's Undisputed
Solar Champion, June 4, 2021
https://www.bloomberg.com/news/articles/2021-06-04/solar-jobs-2021-
how-china-beat-u-s-to-become-world-s-solar-champion ................................... 17

Graham, Allison, Schmidt, Eric, Is China Beating the U.S. to AI Supremacy,
Aug. 2020,
https://www.belfercenter.org/publication/china-beating-us-ai-supremacy ........ 17

Kharpal, Arjun, 'Pathetic' performance has left U.S. 'well behind' China in
5G race, ex-Google CEO Eric Schmidt says, Feb. 17, 2022,
https://www.cnbc.com/2022/02/17/us-well-behind-china-in-5g-race-ex-
google-ceo-eric-schmidt-says.html .................................................................. 16

SBA Office of Advocacy Comments on Changes to Practice for the
Examination of Patent Applications ("SBA Comments"), April 27, 2006,
https://www.uspto.gov/patents/laws/comments-public/comments-
regarding-continuation-practice ........................................................................ 12

Schulze, Mark, The Importance of an Effective and Reliable Patent System
to Investment in Critical Technologies, July 2020,
https://www.usij.org/research/2020/8/3/usij-releases-report-on-the-
importance-of-an-effective-and-reliable-patent-system-to-critical-
technologies ...................................................................................................... 17

University of California Comments on USPTO Rulemaking ("UC
Comments"), May 3, 2006,
https://www.uspto.gov/patents/laws/comments-public/comments-
regarding-continuation-practice ........................................................................ 14

USIJ, U.S. Startup Company Formation and Venture Capital Funding
Trends 2004-2017, July 9, 2018, .........................................................................17

USIJ, U.S. Startup Company Formation and Venture Capital Funding
Trends 2004-2017, July 9, 2018,
https://www.usij.org/research/2018/7/9/us-startup-company-formation-
and-venture-capital-funding-trends-2004-to-2017 .............................................17

Xenecor, Inc.'s Comments on Proposed Rule Making (Xenecor), May 3,
2006,
https://www.uspto.gov/patents/laws/comments-public/comments-
regarding-continuation-practice ................................................................. 12, 13

**STATEMENT OF INTEREST OF THE *AMICUS CURIAE***

The Alliance of U.S. Startups and Inventors for Jobs ("USIJ") is a coalition of 22 startup companies and their affiliated executives, inventors and investors, all of whom share a common dependence on stable and reliable patent protection for their businesses. A list of USIJ members is attached as Appendix A to the Certificate of Interest. USIJ was formed in 2012 to address concerns that legislation, policies and practices adopted by the U.S. Congress, the Federal Judiciary and Federal agencies were and continue to place individual inventors in a Sisyphean position relative to their larger incumbent rivals, both domestic and foreign, and others that would misappropriate their inventions. Independent inventors, entrepreneurs and smaller companies ("Invention Community") are responsible for a disproportionately large number of breakthrough innovations and should be rewarded as such.

USIJ's fundamental mission is to assist and educate Members of Congress, the Federal Judiciary, and leaders in the Executive branch regarding the critical role that patents and other intellectual property rights play in our nation's economic system and the particular importance of startups and small companies to our country's dominance of strategically critical technologies for more than a century. Indeed, these rights are preserved by the very first Article of the United States Constitution.

Appellant Sonos does not oppose the filing of this brief. Appellee Google, LLC, declined to agree to the filing of this *amicus brief* without reviewing it. Accordingly, the brief is accompanied by a short motion respectfully requesting that the Court allow it.

Pursuant to Federal Rule of Civil Procedure 29(a)(4)(E), no party's counsel authored this amicus brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and, no person – other than the *amicus curiae*, its members, or its counsel – contributed money that was intended to fund the preparing or submitting of this brief.

## SUMMARY OF THE ARGUMENT

The decision below erroneously applied the doctrine of prosecution laches to patents whose term is statutorily limited to 20 years from the date of earliest filing. Irrespective of whether the two Sonos patents are accorded the filing date of the earlier provisional application or the later filing date for the nonprovisional, both patents will expire no later than September 2027. Neither continuations nor continuations-in-part can be used to extend the date of expiration. That is a qualitatively different situation from the one that existed prior to the 1995 amendment to 35 U.S.C. § 154, when the term of a U.S. patent was 17 years from the date of issuance, and continuations could be used to keep a patent family active almost indefinitely by a determined applicant. As a result of that amendment, the

'885 and '966 patents at issue in this appeal are limited in term, and any delay in issuance caused by the filing of continuations or continuation-in-part applications simply reduces the period of exclusivity available to the patent owner.[1]  Neither the Supreme Court nor this Court has affirmed a finding of prosecution laches based on a patent claiming a priority date after 1995.

Here, the District Court improperly conflated two separate and distinct provisions of patent law.  Specifically, laches—an *equitable defense* to patent infringement—and the *statutory defense* found in the written description requirement of 35 U.S.C. § 112.  USIJ contends that this conflation of an equitable defense with a statutory defense will create an improper precedent that works to the disadvantage of all patent owners and will be particularly problematic for the Invention Community cohort that includes USIJ.

Startups and small companies operate on limited budgets and often use the opportunity to file a smaller number of patent applications than large companies, but then use an original patent application disclosing the broad aspects to later proceed in multiple directions depending on how their products develop.  For these companies, allowing an infringer to assert an equitable defense of laches based

---

[1]     The Patent Term Restoration Act (Public Law 98-417) allows for an extension of certain kinds of patents where regulatory approval is needed in order to market the covered invention.  35 U.S.C. § 156.  This provision does not apply to either of these patents.

solely on the filing of one or more continuations that are clearly proper under both the Patent Act and the Rules of the USPTO is improper.

From the standpoint of the Invention Community, the U.S. Patent System already appears to be on life support. The strength of a granted United States Patent, backed by the protections of the United States Constitution, was historically a defining characteristic of the U.S. legal system. That strength has eroded over the last two decades because of rulings from the Supreme Court, this Court, and the creation of the *Inter Partes* Review process. Today, many investors and visionary inventors no longer find that patents provide sufficient incentives to make high risk commitments of time and capital. For those who nevertheless take the risk, they oftentimes decide not to use the patent system, depriving society of the innovative disclosures that patents provide, and which is the bedrock upon which iterative innovation stands.

Historically, the Invention Community have been responsible for many of our most important breakthrough inventions. These entities rely on the patent system to protect them from competitors who are often large corporations with immense resources, with the hope that innovation trumps size. For precisely this reason, it is the Invention Community that is most severely affected by the systematic weakening of patent protection, including this most recent decision on prosecution laches.

USIJ does not take any position as to the factual findings of the district court regarding the written description requirement. We argue only that the conflation of the doctrine of prosecution laches and the statutory defense of a lack of written description, is a formula for further confusion and abuse by infringers. If left to stand, this decision will cause even more uncertainty in the system, and will further diminish the ability to protect the stalwart innovations that are the hallmark of the United States' innovation ecosystem. The decision on prosecution laches must be reversed.

## ARGUMENT

## I. Congress, the Courts, and the USPTO Already Have Addressed Proper Continuation Practice

### A. The 1995 Patent Law Amendments Eliminated Abusive Use of Continuations and Any Need for Prosecution Laches

Since its inception until now, the doctrine of prosecution laches has been based on unwarranted patent term extension and bad-faith prosecution conduct that delayed a patent's issuance contributing to unduly extended the patent term. *See, e.g., Woodbridge v. United States*, 263 U.S. 50, 58 (1923) (holding that inventor's refusal to allow patent to issue "would have deprived the public of a decade of free use of the patent which the law intended."); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, 57 F.4th 1346, 1354 (Fed. Cir. 2023); *Hyatt v. Hirchfeld*, 998 F.3d 1347, 1364-65 (Fed. Cir. 2021).

In 1995, Section 154 of Title 35 was amended to limit a patent's term to twenty (20) years from the date of the earliest filed, related application. 35 U.S.C. § 154. Prior to this amendment, a patent term was 17 years from the date of issuance, and each subsequent, related patent (continuation or continuation-in-part or divisional) received an additional 17 years from the date of issuance. Under this old rubric, patentees were able to extend indefinitely the term of their patent protection by continuing to file related applications claiming priority to the earlier filed parent application.

In addition, prior to the 1995 amendments, patent applications were kept confidential until they issued—i.e., there was no publication requirement—so competitors could not determine what was contained in a patent disclosure until it issued as a patent. When a patent applicant used the continuation process repeatedly, after the initial patent application was filed, the applicant could prevent its patents from issuing (or even being publicly available) until the industry covered by the patents had developed for many years. For that reason, such patents were dubbed "submarine patents" that caused extensive upheaval when they surfaced and were entitle to their full exclusionary term. All Federal Circuit precedent on prosecution laches addressed this old rubric that otherwise would have entitled the patentee to a full 17-year term from the date of issuance, no matter how many continuations had been filed or how long from the date of first application filing.

During the 1995 implementation of the General Agreement on Tariffs and Trade ("GATT"), Uruguay Round,[2] Congress amended the patent term such that it could last only 20 years from the date of the first-filed patent application. 35 U.S.C. § 154(a)(2). Congress also required publication of a patent application within 18 months of initial filing. 35 U.S.C. § 122(b). By limiting the total life of a patent to 20 years from the date of first filing and providing for publication, Congress addressed concerns related to the doctrine of prosecution laches and "submarine patents." In addition, unwarranted patent term extension based on bad-faith prosecution conduct had also been stymied, thus eliminating any need for prosecution laches.

The current system encourages early issuance of agreed upon claims, while allowing the patent applicant and the examiner to continue to negotiate other claims. *See e.g.*, Wisconsin Alumni Research Foundation Comments Proposed [USPTO] Rules ("WARF Comments"), April 28, 2006, at 3 (noting that universities, who file applications years before a technology is fully developed, may "agree to initially narrow patent [claims] …. [to have] the initial patent in hand" and then prepare

---

[2] Public Law 103-465, sec. 532(a)(1), 108 Stat. 4983 (1994).

continuing applications, which may be broader or more comprehensive).[3]  Early

patenting and application publication puts the public on notice about what the

patentee may seek to claim based on what is in the specification and rejected claims.[4]

Today, any patent applicant delay after filing its application reduces the time that

any resulting patent can be enforced.  Also, because of the publication requirement,

industry competitors are not surprised when a patent issues because its application

or a prior related patent had been previously published.

    Such is the case here, where Google would have been aware of the family of

patents from which the '885 and the '966 patents stem at least as early as July 9,

2013, the date that the first patent in the family issued, U.S. Patent No. 8,483,853.

Notably prior to the 2014 meeting between Google and Sonos where Google shared

plans for its "Cast Multi-Zone feature."  Appx69.

    From the '853 patent's issuance in 2013 until the last-related patent's

expiration, Google was on notice as to all that was disclosed in the specification,

---

[3]    All citations to the Comments on USPTO Proposed Rulemaking in 2006 are located at https://www.uspto.gov/patents/laws/comments-public/comments-regarding-continuation-practice (last visited Feb. 17, 2024).

[4] A patent applicant may request nonpublication of his application, if he/she certifies that the application will not be the subject of an application filed in another country. *See* 35 U.S.C. § 122(b)(2)(B)(i).  However, even under this election, once the first patent issues in a family, the patent disclosure and prosecution history are publicly available to all.

could determine whether its products fell into that disclosure, and could track what

Sonos was doing in the USPTO with respect to follow-on related application claims,

including the '885 and '966 patents at issue here.[5]

**B.    Responding to USPTO Proposed Rulemaking, this Court has Already Established that Limiting Continuation Practice is too Restrictive**

After implementation of the URAA patent amendments in 1995, the USPTO

sought through its rule making process to limit the number of continuations;

however, the Federal Circuit determined that the USPTO's proposed Rule 78 was

inconsistent with the patent statute.  *See Tafas v. Doll*, 559 F.3d 1345, 1350 (Fed.

Cir. 2009).  Proposed Rule 78 would have required a patent applicant, upon the filing

of a third continuation application,[6] to file a petition "showing that the amendment,

argument, or evidence sought to be entered could not have been submitted using the

prosecution of the prior-filed application."   37 C.F.R. § 1.78(d)(1)(vi); *see also*

*Tafas*, 559 F.3d at 1350.  The Federal Circuit held, however, that Proposed Rule 78

conflicted with 35 U.S.C. § 120 because it "simply captures too many applications

that would not be even remotely susceptible to a prosecution history laches

challenge."  *Tafas*, 559 F.3d at 1362.

---

[5] Sonos' earlier related patents more broadly covered "all zone scenes," and its later patents, including the '885 and the '966 patents, are a subset of those covering "overlapping zone scenes."  Sonos Opening Brief at 23.

[6] The '885 and '966 patents stem from the fourth continuation in their family.

On the related issue of litigation laches, in 2017 the Supreme Court reversed this Court's *en banc* decision.  The Supreme Court held as a matter of law that a seven year delay by a patent owner in bringing litigation against an infringer did not constitute laches.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 338 (2017).  The opinion states:

> Even if we assume for the sake of argument that § 282(b)(1) incorporates a laches defense of some dimension, it does not necessarily follow that this defense may be invoked to bar a claim for damages incurred within the period set out in § 286. Indeed, it would be exceedingly unusual, if not unprecedented, if Congress chose to include in the Patent Act both a statute of limitations for damages and a laches provision applicable to a damages claim.  Neither the Federal Circuit, nor First Quality, nor any of First Quality's *amici* has identified a single federal statute that provides such dual protection against untimely claims.

*Id.* at 339.  The Court's rationale is based on the absence of any Congressional intent to provide for **both** a laches defense and a 6-year statute of limitations defense for damages.

Although the Supreme Court in *SCA Hygiene* did not address "prosecution" laches directly, the reasoning applies squarely to both types of laches.  Because a patent owner is limited to a period of exclusivity that ends 20 years after the filing date of the first application (35 U.S.C. § 154(a)(2)), and because damages also are limited to six years prior to filing of the litigation (35 U.S.C. § 286), the Supreme

10

Court's logic in *SCA Hygiene*, that no "single federal statute … provides such a dual protection against untimely claims" applies equally to the instant. *See id.*

USIJ submits that a patentee is entitled, under the foregoing precedents, to the full statutory period of patent protection without fear of imposition of prosecution laches.

## II. Small Companies, Startups, and Sole Inventors Rely on Continuation Practice in order to be Competitive Against their Larger Incumbents

Patent application filing and prosecution is expensive, especially for the Invention Community. "Strong patent protection" often means obtaining multiple patents that protect the many versions of the innovations and improvements that arise over the course of development. *See* California Healthcare Institute's Comments to Notice of Proposed Rulemaking ("CHI Comments"), May 1, 2006, at 2 (referring to the life science industry, but applicable throughout). Further, many times, patent protection is the sole tool that allows these innovative young companies to compete against established incumbents.

Individuals and small companies, therefore, often rely on continuation practice to allow them to protect their inventions efficiently and with a limited number of originally filed patent applications. Their trade-off, under today's rules of course, is a reduced period of exclusivity for later-prosecuted patents. If individuals and small companies were required to prosecute all their innovations

contemporaneously, that would place a significant and often unbearable financial burden on them. *See* Burnham Institute for Medical Research Comments on Notice of Proposed Rulemaking ("BIMR Comments"), May 3, 2006, at 2 ("The changes [to limit continuation practice] would be particularly devastating for non-profit and academic research institutions and small businesses").

Further, many subsequent innovations based on an original disclosure would not be able to be protected, which would inhibit small companies' abilities to protect what may be the most important embodiments of their inventions and enhance their portfolios. *See* SBA Office of Advocacy Comments on Changes to Practice for the Examination of Patent Applications ("SBA Comments"), April 27, 2006, at 3-4. Without the ability to protect derivative inventions via continuations, and to present a meaningful portfolio to potential investors, additional funding for the initial patent-holder and/or successor startup likely would not be available. *See* CHI Comments at 2. Additionally, many individuals and resource limited companies may be forced to put their inventions into the public domain or turn to trade secrets as an option to protect their intellectual property. *See* Xenecor, Inc.'s Comments on Proposed Rule Making (Xenecor), May 3, 2006, at 3 (addressing concerns for resource limited biotech companies).

Long development times and high development costs associated with many industries require the flexibility of this settled continuation practice. For example,

> [A]pplicants can file early on the broad inventive concept in order to attract investors and then, as development continues, use continuing applications to adapt claims to cover the eventual commercial embodiment and file new claims to cover additional embodiments that have been validated during development.

BMIR at 5. This is precisely what Sonos did here. By contrast, the rule as erroneously stated by the district court would force individuals and small companies to decide between filing early to attract licensees and/or funding, and hoping they correctly predicted what the eventual product will encompass, or holding off filing, making funding more difficult and jeopardizing the protection of their inventions under our first-to-file system. *Id.* at 6.

In addition, during the course of prosecution, some companies change the commercial direction of their inventions and need to make comparable changes in the claims. For example, a small company working on a license agreement may change the focus of the claimed invention to support the needs of the licensee to obtain the best chance of securing monetary support. *See* Xenecor at 2-3. In such situations, the fear of subjective application of prosecution laches will make licensing more difficult, "thus limiting the commercialization of inventions and denying the public the benefit of these inventions." *Id.* at 6.

Further, use of a laches doctrine will necessarily delay the filing of patent applications and thereby defeat one of the major benefits of the patent system: the early disclosure of new innovations. Instead of filing a patent application that

discloses a host of inventions to be published and prosecuted in due course, under the threat of prosecution laches, innovators may opt to withhold filing until the ultimate commercial embodiment has been determined, thus depriving the public of information that can be used for further innovation. Indeed, limiting the continuation process would "unfairly disadvantage universities and small entities through increased patent costs, increased uncertainty in the patent prosecution process and reduced protections for significant innovation. *See* University of California Comments on USPTO [Proposed] Rulemaking ("UC Comments"), May 3, 2006, at 3. These protections are critical to attract licensees or purchasers that translate the technology into commercial assets. *Id.*

## III. The District Court's Decision will Require Patent Applicants to Attempt to Prosecute All Disclosed Inventions Simultaneously

The ruling below creates a terrible precedent for a fair administration of the U.S. Patent System in several respects. First, in addition to patent term extension, laches requires both unjustified delay and reliance by the alleged infringer, both of which require discovery as to motives and knowledge, with all the baggage that those issues entail for litigants. Startups and small companies trying to enforce a patent are already burdened by the enormous commitment of time and expenses it entails. Without a compelling need for starting down this path, which as we pointed out in Section I, was dispelled in 1995 with the amendment to Section 154, imposing such

additional burdens on small companies makes no sense. Second, even assuming that there does still exist some basis for the application of prosecution laches, the district court's analysis of the delay was greatly exaggerated.[7]

The court determined that the period of delay by Sonos during prosecution was *"over thirteen years,"* counting from the filing date of the provisional application to the issue date of the '885 and '966 patents. Appx51. In reaching that number, the district court counted against Sonos: (1) the year that the case was a provisional, (2) the time that Sonos was prosecuting earlier patents in the continuation chain, and (3) any delays attributable to the patent office in reviewing the chain of patent applications.[8] A proper calculation of unreasonable delay, however, should not include: (1) the time spent as a provisional application, which is an informal, low cost option, allowing the patent applicant to determine whether it makes business and financial sense to proceed in a year with a utility application, 35 U.S.C. § 111(b); (2) the prosecution of serial patent applications, a practice that this Court has approved, *see Tafas*, 559 F.3d at 1350; (3) any patent office delay that is not counted against the patentee, *see, e.g.,* 37 C.F.R. § 1.705. Instead, the district

---

[7]     The district court's the conflation of an equitable laches defense with the statutory §112 defense can only create further confusion.

[8]     For example, the parent '853 patent incorporated a patent term adjustment due to USPTO delay under 35 U.S.C. 154(b) of 1443 days (almost 4 years).

court implied that Sonos should have been prosecuting all the inventions in the patent application in parallel, Appx53, precisely the practice that is impossible for many startups due to both expense and development timelines, as noted above.

## IV.   Declines in the Certainty of Patent Protection have Fostered Declines Investments in Technology Startups for More Than a Decade.

Since the early 2000s, our country has seen a general trend from both Congress and the Federal Judiciary towards rules and litigation outcomes favoring infringers over patent owners. There are multiple facets of this trend, but cases such as this are seen by many in the investor and inventor communities as exemplars for whether we still have a patent system that actually works for innovators or one that favors copyists and infringers. We are at a crucial point in the history of strategically essential technologies, because several other nations have followed the prior U.S. model, strengthening their patent systems to promote the progress of science and the useful arts, particularly in those area of technology that are defining the twenty-first century.[9]   USIJ strongly urges the Court, as it addresses the application of

---

[9]     *See, e.g.*, Kharpal, Arjun, 'Pathetic' performance has left U.S. 'well behind' China in 5G race, ex-Google CEO Eric Schmidt says, Feb. 17, 2022, https://www.cnbc.com/2022/02/17/us-well-behind-china-in-5g-race-ex-google-ceo-eric-schmidt-says.html (last visited Feb. 17, 2024);

Dlouhy, Jennifer, How China Beat the U.S. to Become World's Undisputed Solar Champion, June 4, 2021   https://www.bloomberg.com/news/articles/2021-06-

prosecution laches in this case, to consider the long term impact that innovation has on our nation's well-being and the role that patents play in that assessment.

The weakening of patent protection in the United States since 2004 has led to a corresponding decline in the willingness of entrepreneurs and inventors to rely on patents as the foundation for making investments. For example, in 2018, USIJ published a report finding that over the prior 13 years, investment in new, strategically critical industries declined substantially (over 17%), with venture funders opting instead to invest in non-critical industries such as apparel, hotels, and social media.[10] That trend was confirmed in 2020 in an independent report by

---

04/solar-jobs-2021-how-china-beat-u-s-to-become-world-s-solar-champion (last visited Feb. 17, 2024);

Graham, Allison, Schmidt, Eric, Is China Beating the U.S. to AI Supremacy, Aug. 2020, https://www.belfercenter.org/publication/china-beating-us-ai-supremacy (last visited Feb. 17, 2024).

[10] *See* USIJ, U.S. Startup Company Formation and Venture Capital Funding Trends 2004-2017, July 9, 2018,, at 9, https://www.usij.org/research/2018/7/9/us-startup-company-formation-and-venture-capital-funding-trends-2004-to-2017 (last visited Feb. 17, 2024). *See* USIJ, U.S. Startup Company Formation and Venture Capital Funding Trends 2004-2017, July 9, 2018,, at 9, https://www.usij.org/research/2018/7/9/us-startup-company-formation-and-venture-capital-funding-trends-2004-to-2017 (last visited Feb. 17, 2024).

Professor Mark F. Schultz.[11]  These declines in investment in new, strategically critical technologies do not bode well for this country and can be linked to the increasing uncertainty of the protection provided by the US Patent System.  If the prosecution laches decision in this case is affirmed, it will simply further weaken the system by providing one more tool for infringers to kill patents leading to more uncertainty in the Invention Community.

---

[11]    *See* Schulze, Mark, The Importance of an Effective and Reliable Patent System to Investment in Critical Technologies, July 2020. https://www.usij.org/research/2020/8/3/usij-releases-report-on-the-importance-of-an-effective-and-reliable-patent-system-to-critical-technologies (last visited Feb. 19, 2024).

## CONCLUSION

USIJ strongly urges the Court reverse the district court's decision on prosecution laches, because for patent's filed after 1995, the applicant can no longer extend the patent term. Otherwise, this decision will add to the mounting uncertainty that is damaging the Invention Community's ability to protect innovations and drive technological development.

Dated:  February 20, 2024

ROBERT P. TAYLOR
**RPT LEGAL STRATEGIES PC**
2443 Fillmore Street
Suite 332
San Francisco, California  94115
650.400.6995
robert.taylor@rptstrategies.com

Respectfully submitted,

*Meredith Martin Addy*

MEREDITH MARTIN ADDY
**ADDYHART P.C.**
10 Glenlake Parkway
Suite 130
Atlanta, Georgia  30328
312.320.4200
meredith@addyhart.com

**CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMITATIONS**

***Google, LLC v. Sonos, Inc.***

No. 24-1097

This brief complies with the relevant type-volume limitation of the Federal

Rule of Appellate Procedure and Federal Circuit Rules because it has been prepared

using a proportionally-spaced typeface and includes 3736 words.

Dated:  February 20, 2024            By: /s/ *Meredith Martin Addy*

                                          Meredith Martin Addy



a