## No. 24-1097

United States Court of Appeals
for the Federal Circuit

―――――――――――――

GOOGLE LLC,

*Plaintiff-Appellee*

v.

SONOS, INC.,
*Defendant-Appellant*

―――――――――――――

On Appeal from the United States District Court for the Northern
District of California in Nos. 3:20-cv-06754-WHA
& 3:21-cv-07559-WHA, Judge William H. Alsup

―――――――――――――

## BRIEF OF THE NATIONAL RETAIL FEDERATION IN SUPPORT OF GOOGLE AND AFFIRMANCE

Joseph Matal
CLEAR IP, LLC
800 17th St., NW
Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amicus Curiae*

May 31, 2024

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for the National Retail Federation certifies that:

1.  The full name of the party that I represent is the National Retail Federation

2.  There are no real parties in interest of the party that I represent

3.  There are no parent corporations or publicly held companies that own ten percent or more of the stock of the party that I represent

4.  No other law firms, partners, or associates who have not entered an appearance in this appeal either appeared for the party that I represent in the originating court or are expected to so appear in this Court

5.  I do not know of any case in this or any other court or agency that will directly affect or be directly affected by this Court's decision in this case

6.  No disclosure regarding organizational victims in criminal cases or debtors or trustees in bankruptcy cases is required under Fed. R. App. P. 26.1(b) or (c).

May 31, 2024                                    */s/ Joseph Matal*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..............................................**iii**

**INTEREST OF AMICUS CURIAE** ...................................**1**

**ARGUMENT** ...............................................................**3**

   **I.**  **Prosecution laches does not require a time-wise extension of patent term** .....................................**3**

      **A.**  **The Supreme Court has applied laches to reissues, which *cannot* result in a time-wise extension of term** ............................................**5**

      **B.**  **Prosecution laches must be applied *in pari materia* with § 251(d) to avoid vitiating the latter's limits on broadening reissue** ..............**12**

      **C.**  **Sonos's other proposed constraints on laches are contrary to precedent** ..............................**18**

  **II.** **The burden of proof for establishing prosecution laches is preponderance of the evidence** ..........**20**

 **III.** **It was proper for the court to independently decide laches** ................................................**24**

 **IV.** **Section 120 does not create a right to unrestricted continuation practice** ...................**28**

**CONCLUSION** ..........................................................**32**

# TABLE OF AUTHORITIES

## *Cases*

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)....................................................20, 21, 22

*Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999).27

*Burr v. Duryee*, 68 U.S. 531 (1863).........................................5

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724 (Fed. Cir. 2010)............................................................ 3, 19

*Corbin Cabinet Lock Co. v. Eagle Lock Co.*, 150 U.S. 38 (1893) ..9

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356 (Fed. Cir. 2018).............................................................24

*Crown Cork & Seal Co. v. Ferdinand Gutmann Co.*, 304 U.S. 159 (1938)..............................................................................11

*Dietz v. Bouldin*, 579 U.S. 40 (2016) ....................................27

*Ex Parte Perez*, 398 S.W.3d 206 (Crim. App. Tex. 2013) ..........23

*Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677 (7th Cir. 1977) ...........................................................................11

*General Talking Pictures Corp. v. W. Elec. Co.*, 304 U.S. 175 (1938)..............................................................................11

*Helvering v. Mitchell*, 303 U.S. 391 (1938) ............................26

*Huff v. Huff*, 895 N.E.2d 407 (Ind. App. 2008) .......................23

*Hyatt v. Hirshfeld*, 998 F.3d 1347, 1360 (Fed. Cir. 2021) ...passim

*In Re Barratt's Appeal*, 14 App. D.C. 255 (1899) .....................29

*In re Henriksen*, 399 F.2d 253 (CCPA 1968) ...........................29

*In re Vox Populi Registry Ltd.*, 25 F.4th 1348  (Fed. Cir. 2022) .30

*Ives v. Sargent*, 119 U.S. 652 (1887) ...........................9, 10, 19

*J.P. Stevens & Co., Inc. v. Lex Tex Ltd.*, Inc., 747 F.2d 1553 (Fed. Cir. 1984)................................................................. 20

*Jones v. State*, 445 Md. 324 (Md. 2015)..................................23

*Kahn v. Dynamics Corp. of America*, 508 F.2d 939 (2d Cir. 1974) ......................................................................................11

*Kendall v. Winsor*, 62 U.S. 322 (1858) ............................... 5, 17

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988) ..........................................................21

*LaSalle Nat. Bank v. Dubin Residential Communities Corp.*, 337 Ill.App.3d 345 (Ill. App. 2003)............................................23

*Mahn v. Harwood*, 112 U.S. 354 (1884) ........................8, 10, 19

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .24

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) .24

*Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011)..26

*Miller v. Bridgeport Brass Co.*, 104 U.S. 350 (1881)...........passim

*Nielson v. Shinseki*, 607 F.3d 802 (Fed. Cir. 2010) .......15, 17, 30

*Overland Motor Co. v. Packard Motor Car Co.*, 274 U.S. 417 (1927)..............................................................................29

*Peck v. Jenness*, 48 U.S. 612 (1849) ............................... 15, 17

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)....15

*Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008) ...............................................................................25

*Rudolph v. Viking Int'l Resources Co., Inc.*, 84 N.E.3d 1066 (Ohio App. 2017)......................................................................22

*SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328 (2017) ............................................ 15, 23

*Symbol Techs., Inc. v. Lemelson Medical*, 277 F.3d 1361 (Fed. Cir. 2002) ................................................................passim

*Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340 (Fed. Cir. 2022) ..................................................................... 27

*United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984) ................................................................................ 26

*Webster Elec. Co. v. Splitdorf Elec. Co*., 264 U.S. 463 (1924) .... 9, 10, 18

*Wilcox v. First Interstate Bank of Oregon, N.A*., 815 F.2d 522 (9th Cir. 1987) ......................................................................... 26

*Wollensak v. Reiher*, 115 U.S. 96 (1885) ..........................passim

### Statutes

35 U.S.C. § 120............................................................ 28, 30

35 U.S.C. § 251(d) ............................................... 4, 12, 14, 17

35 U.S.C. § 282(b) ..................................................14, 28, 30

35 U.S.C. § 286............................................................... 22

Patent Act of 1952, Pub. L. No. 82-593 (1952) ................. 12, 16

Uruguay Round Agreements Act, Pub. L. 103-465 (1994)..... 4, 17

### Rules

Fed. Rule. Civ. P. 54(b) ....................................................... 27

### Treatises

18 Fed. Prac. & Proc. Juris. § 4422 (3d ed.)............................ 25

18B Fed. Prac. & Proc. Juris. § 4478.1 (3d ed.) ....................... 27

v

50 C.J.S. Judgments § 1001 .................................................. 25

P.J. Federico, Commentary on the New Patent Act (West 1954),
    reprinted in 75 J. PAT. & TRADEMARK OFF. SOC'Y 161 (1993)
    ............................................................................ 12, 13

## INTEREST OF AMICUS CURIAE

The National Retail Federation ("NRF") is the world's largest retail trade association. Retail is by far the largest private-sector employer in the United States, supporting one in four U.S. jobs—approximately 52 million American workers—and contributing $3.9 trillion to the annual GDP.

Retailers and other main-street businesses are frequent targets of abusive patent litigation. NRF and its members are particularly concerned about the misuse of continuation practice and the dilatory claiming of inventions. In NRF's members' experience, it is the continuation that is sought years after the original application was filed that is most likely to be abusively asserted and to bear at best a tenuous relationship to what the original application described as its invention.

By requiring patent owners to justify a late attempt to broaden claims—at least in cases in which intervening rights have arisen—prosecution laches plays an important role in preventing the misuse of continuation practice. NRF and its members are

interested in the preservation and continued enforcement of prosecution laches.[1]

---

[1] No counsel for any party wrote any part of this brief. No party other than amicus curiae's members contributed any money that was intended to fund the preparation or submission of this brief. This brief is filed with the consent of both parties.

## ARGUMENT

### I.   Prosecution laches does not require a time-wise extension of patent term

Prosecution laches is an equitable defense that may render a patent unenforceable when "it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under a totality of the circumstances." *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1360 (Fed. Cir. 2021); *see also Symbol Techs., Inc. v. Lemelson Medical*, 277 F.3d 1361, 1363 (Fed. Cir. 2002) ("*Symbol Techs. I*").

Application of prosecution laches also requires a finding that another party was prejudiced by the patent owner's delay in seeking claims.  *See Hyatt v. Hirshfeld*, 998 F.3d at 1360; *see also Cancer Research Tech. Ltd. v. Barr Labs., Inc*., 625 F.3d 724, 732 (Fed. Cir. 2010) ("[B]oth the Supreme Court and our cases establish that evidence of intervening rights is required to establish 'an unreasonable and unexplained delay in prosecution.'").

Sonos and its amici contend that a prosecution laches defense cannot be established unless the patentee's actions have resulted in a time-wise extension of patent term.   They suggest that

3

prosecution laches was effectively repealed by the Uruguay Round Agreements Act's[2] adoption of a patent term that runs from the filing of a patent rather than the patent grant. *See* Sonos at 27-29; AIPLA at 3-8; USIJ at 5-8.

A review of the history of prosecution laches and its statutory context dispels such notions. The Supreme Court first applied laches to specifically restrict *reissue*—a process that cannot result in a time-wise extension of patent term. This caselaw was subsequently codified in 35 U.S.C. § 251(d)'s bar on seeking a broadening reissue more than two years after the grant of a patent.[3] In addition, Sonos's proposed neutering of prosecution laches is inconsistent with the structure of the Patent Act: it would allow every single patent claim that is barred by § 251(d) to instead be obtained in identical form in a continuing application— *regardless* of the amount of delay or the prejudice to the public.

---

[2] Pub. L. 103-465 (1994).

[3] *See* 35 U.S.C. § 315(d) ("No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.").

4

**A.    The Supreme Court has applied laches to reissues, which *cannot* result in a time-wise extension of term**

The Supreme Court first addressed the equitable considerations underpinning prosecution laches in *Kendall v. Winsor*, 62 U.S. 322 (1858).  It noted that a patentee "may forfeit his rights as an inventor by a willful or negligent postponement of his claims," *id.* at 329—"or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others." *Id.*  The Court concluded that while "the remuneration of genius and useful ingenuity is a duty incumbent upon the public, the rights and welfare of the community must be fairly dealt with and effectually guarded." *Id.*

The Court subsequently made clear that these concerns are implicated by a late attempt to broaden claims in a patent via reissue.  *Burr v. Duryee*, 68 U.S. 531 (1863), held that such a use of reissue is "a great abuse" and causes "injury to the public:"

> The surrender of valid patents, and the granting of reissued patents thereon, with expanded or equivocal claims, where the original was clearly neither 'inoperative nor invalid,' and whose specification is neither 'defective or insufficient,' is a great abuse of the privilege granted by the statute, and productive of great injury to the public. This privilege was not given to the

5

> patentee or his assignee in order that the patent may be rendered more elastic or expansive, and therefore more 'available' for the suppression of all other inventions.

*Id.* at 577.

The Supreme Court first applied prosecution laches to restrict the use of broadening reissue in *Miller v. Bridgeport Brass Co*., 104 U.S. 350 (1881). The Court began by emphasizing that a patent owner should be able to recognize when its newly issued patent claims less than the patentee had intended:

> [I]f a claim is too narrow,—that is, if it does not contain all that the patentee is entitled to,—the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, there can be no valid excuse for delay in asking to have it corrected.

*Id.* at 355.

The Court held that a failure to promptly correct such an error surrenders the unclaimed subject matter to the public:

> But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public.

*Id.* at 352.

6

*Bridgeport Brass* ruled that "[a]ny unnecessary laches or delay in a matter thus apparent on the record affects the right to alter or reissue the patent for such cause." *Id.* at 352; *see also id.* ("Nothing but a clear mistake, or inadvertence, and a speedy application for its correction, is admissible when it is sought merely to enlarge the claim.").

The Court emphasized that allowing an enlargement of claims long after the patent issued would be unduly prejudicial to the public—and thus is barred by laches:

> Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim. The granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void. It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretence of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms. Such a process of expansion carried on indefinitely, without regard to lapse of time, would operate most unjustly against the public, and is totally unauthorized by the law. In such a case, even he who has rights, and sleeps upon them, justly loses them.

*Id.* at 355.[4]

The Supreme Court reaffirmed that prosecution laches restricts the use of reissue to broaden claims in *Mahn v. Harwood*, 112 U.S. 354 (1884). The Court held that the Commissioner of Patents had erred by allowing the reissue, and it reiterated the reasons why laches prevents a late attempt to enlarge claims (in this case, four years after the patent had issued):

> But there are substantial reasons, not applicable to these cases, why a claim cannot be enlarged and made broader after an undue lapse of time. The rights of the public here intervene, which are totally inconsistent with such tardy reissues; and the great opportunity and temptation to commit fraud after any considerable lapse of time, when the circumstances of the original application have passed out of mind, and the monopoly has proved to be of great value, make it imperative on the courts, as a dictate of justice and public policy, to hold the patentees strictly to the rule of reasonable diligence in making applications for this kind of reissues.

*Id.* at 360.

The Supreme Court also applied laches to reissue in *Wollensak v. Reiher*, 115 U.S. 96 (1885). Holding that a five-year delay

---

[4] *See also id.* ("Patents have been so expanded and idealized, years after their first issue, that hundreds and thousands of mechanics and manufactures, who had just reason to suppose that the field of action was open, have been obliged to discontinue their employments, or to pay an enormous tax for continuing them.").

barred a broadening of claims, the Court articulated what had become the established doctrine:

> [T]he settled rule of decision is that if it appears, in cases where the claim is merely expanded, that the delay has been for two years or more, it is adjudged to invalidate the reissue, unless the delay is accounted for and excused by special circumstances, which show it to have been not unreasonable.

*Id.* at 101.

Finally, the Supreme Court also applied laches to block an enlargement of claims via reissue after a three-year delay in *Ives v. Sargent*, 119 U.S. 652 (1887); *see id.* at 662 ("[T]he circuit court was clearly in the right in deciding the reissue void as to the third and fourth claims, on the ground that the right to apply for it had been lost by the laches of the patentee and his assignee."); *see also Corbin Cabinet Lock Co. v. Eagle Lock Co.*, 150 U.S. 38 (1893) (applying laches to reissue).

When the Supreme Court later extended laches to the broadening of claims in a *continuing application* in *Webster Elec. Co. v. Splitdorf Elec. Co.*, 264 U.S. 463 (1924), it did so by way of "analogy [to] the case of a reissue patent." *Id.* at 469. *Webster* concluded that the reissue-laches cases are "pertinent, and the principle which they announce is controlling." *Id.*; *see also id.* at

9

466-68 (discussing *Bridgeport Brass*, 104 U.S. 350, *Mahn v. Harwood*, 112 U.S. 354, *Wollensak v. Reiher*, 115 U.S. 96, and *Ives v. Sargent*, 119 U.S. 652).

Applying the rule articulated in the reissue cases, *Webster* found that the patentee's eight-year delay in seeking broadened claims in a continuing application was unreasonable and unjustified and thus barred by laches:

> [This is] a case of unreasonable delay and neglect on the part of the applicant and his assignee in bringing forward claims broader than those originally sought. The repeated assertion of interferences in narrower terms, resulting in delays incident to their determination, affords no just excuse for the failure to assert the broader claims, 7 and 8, at an earlier date. The subject-matter of these claims is not of such complicated character that it might not have been readily described in the original application or in one of the subsequent applications—in 1915, for example—as it was described in 1918, and the long delay of Kane and his assignee in coming to the point tends strongly to confirm the view that the final determination to do so was an exigent afterthought, rather than a logical development of the original application. We have no hesitation in saying that the delay was unreasonable, and, under the circumstances shown by the record, constitutes laches, by which the petitioner lost whatever rights it might otherwise have been entitled to.

*Id.* at 465-66.

The Supreme Court subsequently reaffirmed the applicability of prosecution laches to continuing applications in *Crown Cork & Seal Co. v. Ferdinand Gutmann Co*., 304 U.S. 159 (1938), and *General Talking Pictures Corp. v. W. Elec. Co*., 304 U.S. 175, 183 (1938).[5]  The regional U.S. Courts of Appeal continued to apply the doctrine until this Court was created and given exclusive jurisdiction over civil actions arising under the Patent Act.  *See, e.g.*, *Faulkner v. Baldwin Piano & Organ Co*., 561 F.2d 677, 683-84 (7th Cir. 1977); *Kahn v. Dynamics Corp. of America*, 508 F.2d 939, 943 (2d Cir. 1974).

In sum, the application of laches to continuing applications emerged from precedents that applied laches to restrict the enlargement of claims in reissue.  These cases make clear that the ways in which a patent may be improperly "expand[ed]," *Bridgeport Brass*, 104 U.S. at 355, *Wollensak*, 115 U.S. at 101, so as to run afoul of laches are not restricted to situations involving a

---

[5] Contrary to Sonos's contention that *General Talking Pictures* "rejected" application of the doctrine to continuing applications, *see* Sonos at 45, this Court has recognized that "in *General Talking Pictures,* the [Supreme] Court rejected the defense of prosecution laches because there was no evidence of intervening public rights." *Symbol Techs. I*, 277 F.3d at 1365.

time-wise extension of term.  Rather, laches can apply in any case in which the patentee has unreasonably and without explanation enlarged its claims to the prejudice of the public.

### B. Prosecution laches must be applied *in pari materia* with § 251(d) to avoid vitiating the latter's limits on broadening reissue

By the mid-20th century, the application of laches to bar a late reissue that enlarges claims was sufficiently clear and established that Congress codified it in the Patent Act of 1952, Pub. L. No. 82-593 (1952).  Section 251(d), which was enacted by that Act, provides:

> No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent.

35 U.S.C. § 251(d).

In his Commentary on the New Patent Act, P.J. Federico describes the decision to codify the reissue-laches precedents in § 251(d):

> While the old statute began with the word "Whenever" and no time limitation was expressed, the courts developed a rule of laches according to which a broadened reissue could not be applied for more than two years after the grant of the original patent except under extraordinary circumstances excusing the delay, and the delay was seldom excused. This rule of laches had been applied in a few instances when the delay was

12

less than two years, and, since 1939, when the former public use period of two years which served as an analogy for the time under the laches rule, was changed to one year, the period of laches has been taken as one year in some cases. The new statute enacts a fixed period of two years from the grant of the original patent, within which to apply for a reissue "enlarging the scope of the claims of the original patent." Such a reissue cannot be obtained on an application filed more than two years after the date of the original patent, and presumably is timely if applied for within two years as far as the reissue requirements are concerned. The statute does not define a broadened reissue, or a reissue which enlarges the scope of the claims of the original patent, but the cases indicate that the general rule is that if a claim of a reissue can hold something as an infringement which would not be an infringement of any of the claims of the original patent (not considering the validity of such claims), then the particular claim of the reissue enlarges the scope of the claims of the original patent, and that a claim is broadened if it is broadened in any respect.

P.J. Federico, Commentary on the New Patent Act (West 1954), reprinted in 75 J. PAT. & TRADEMARK OFF. SOC'Y 161, 205 (1993).[6]

   At the same time that Congress systematized reissue laches as a statutory rule, it also codified the unenforceability basis of the

---

[6] This Court has looked to Federico's Commentary when interpreting and applying the laches defense. *See, e.g.*, *Symbol Techs. I*, 277 F.3d at 1366.

laches defense.  Section 282(b)(1), which was also enacted by the 1952 Act, provides that among the available "defenses in any action involving the validity or infringement of a patent" is "*unenforceability*."  35 U.S.C. § 282(b)(1) (emphasis added).

As this Court recently noted, "in enacting the Patent Act of 1952, Congress intended the prosecution laches defense to remain available."  *Hyatt v. Hirshfeld*, 998 F.3d at 1360; *see also id.* at 1360-61 (citing Federico for the proposition that "§ 282 incorporated the defenses to infringement that were available at that time, including laches, such that they remained available to accused infringers"); *Symbol Techs. I*, 277 F.3d at 1366 ("The defenses which may be raised in an action involving the validity or infringement of a patent" include "equitable defenses such as laches.") (quoting Federico, 75 J.P.T.O.S. at 215).

Section 251(d)'s limit on broadening reissue and § 282(b)'s codification of the unenforceability defenses thus complement and reinforce each other.  Section 251(d) protects the public against dilatory broadening of claims in reissue, while the laches defense ensures that the exact same claims cannot be untimely and prejudicially obtained in a continuing application.

14

This Court has emphasized that "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Nielson v. Shinseki*, 607 F.3d 802, 807 (Fed. Cir. 2010) (*quoting Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)). "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' *id.* (*quoting Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995), "and 'fit, if possible, all parts into an harmonious whole.'" *Id.* (*quoting FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)); *see also Peck v. Jenness*, 48 U.S. 612, 623 (1849) ("One portion of a statute should not be construed to annul or destroy what has been clearly granted by another.").

Sonos and its amici contend that *because* Congress imposed a statutory deadline for seeking enlarged claims in a reissue but did not do so for continuing applications, laches *cannot* be applied to continuations.  *See* Sonos at 39; GW at 5-6; USIJ at 10-11.

This argument has it exactly backwards.  "Laches is a gap-filling doctrine." *SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328, 335 (2017).  "[Laches'] principal application was, and remains, to claims of an equitable cast for

15

which the Legislature has provided no fixed time limitation." *Petrella v. Metro-Goldwyn-Mayer, Inc*., 572 U.S. 663, 678 (2014); *see also id.* at 669-70 ("When Congress fails to enact a statute of limitations, a [federal] court that borrows a state statute of limitations but permits it to be abridged by the doctrine of laches is not invading congressional prerogatives. It is merely filling a legislative hole.") (*quoting Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 881 (7th Cir. 2002)).

Because no statutory time limit governs seeking enlarged claims in a continuing application, the equitable defense of laches 'fills the gap' and protects the public against dilatory and prejudicial claims.  Indeed, in this case the availability of laches is more than just a background principle.  *Cf. Petrella*, 572 U.S. at 679 (noting that "[l]aches is listed among affirmative defenses, along with, but discrete from, the statute of limitations, in Federal Rule of Civil Procedure 8(c).").   This Court has already determined that Congress, by codifying the unenforceability defense in § 282, specifically intended to preserve prosecution laches and *Webster*'s application of the defense to continuing applications.  *See Hyatt v. Hirshfeld*, 998 F.3d at 1360; *Symbol Techs. I*, 277 F.3d at 1366.

16

A robust laches defense that bars dilatory claims such as those obtained by Sonos is thus consonant with the 1952 Act's structure. Such a construction reads the statute as a "symmetrical" and "harmonious whole," *Nielson*, 607 F.3d at 807, in which laches and § 251(d) work in tandem to ensure that "the rights and welfare of the community [are] fairly dealt with and effectually guarded." *Kendall v. Winsor*, 62 U.S. at 329.

Under Sonos's contrary interpretation, by contrast, every single patent claim that is prohibited by § 251(d) could instead be obtained by the same patentee in identical form via a continuing application—*regardless* of how late the request or how prejudicial it is to the public. This Court should hesitate to conclude that the Congress that enacted the URAA, though making no changes to § 282(b), nevertheless sought to *sub silentio* "annul or destroy" the protections for the public that are "clearly granted" by § 251(d). *Peck v. Jenness*, 48 U.S. at 623.

Cases such as *Hyatt v. Hirshfeld* and *Symbol Technologies* involved outrageous behavior that, if permitted, would have resulted in a time-wise extension of patent term. But the prosecution behavior that laches proscribes is not confined to the facts of those cases.

17

**C.    Sonos's other proposed constraints on laches are contrary to precedent**

Sonos and its amici suggest that laches can only arise from a period of prosecution inactivity—and thus laches cannot apply in this case because Sonos occupied itself seeking other claims before it obtained the claims at issue.  *See* Sonos at 34-36; AIPLA at 12. Sonos and amici also contend that a patent specification's unclaimed description of an invention alone provides notice to the public and thereby preempts a finding of laches prejudice.  *See* Sonos at 41; AIPLA at 9-10; GW at 7.

The Supreme Court's initial decision extending laches to continuing applications precludes such arguments.  *Webster* involved an eight-year delay in obtaining enlarged claims, during the latter part of which the patent owner was preoccupied with interference proceedings.  *See Webster*, 264 U.S. at 465.  The Supreme Court found that the pursuit of related claims did not justify the delay in seeking the broadened claims:

> The repeated assertion of interferences in narrower terms, resulting in delays incident to their determination, affords no just excuse for the failure to assert the broader claims, 7 and 8, at an earlier date.

*Id.* at 466.

18

*Webster* also made clear that the mere disclosure of the late-claimed subject matter in the original specification does not affect a finding of laches—what matters is whether the subject matter was timely *claimed*.  *See id.* at 465 ("During all of this time their subject-matter was disclosed and in general use, and Kane and his assignee, so far as claims 7 and 8 are concerned, simply stood by and awaited developments.").

Indeed, all the foundational prosecution laches decisions focus on what is claimed—not on what is described in the specification.  In *Bridgeport Brass*, the Supreme Court held that "an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed." 104 U.S. at 352; *see also Mahn v. Harwood*, 112 U.S. at 360 ("[T]here are substantial reasons . . . why a *claim* cannot be enlarged and made broader after an undue lapse of time.") (emphasis added); *Wollensak v. Reiher*, 115 U.S. at 101; *Ives v. Sargent*, 119 U.S. at 662.

This Court has repeatedly held that a finding of prosecution laches requires unreasonable and unexplained delay and intervening rights.  *See Hyatt v. Hirshfeld*, 998 F.3d at 1360; *Cancer Research*, 625 F.3d at 732.  Sonos's pursuit of numerous

19

*other* claims does not excuse its delay in seeking the broadened claims at issue, and it certainly does not erase the intervening rights of the public.  The focus of prosecution laches has always been on what is claimed rather than what is merely disclosed.

## II.    The burden of proof for establishing prosecution laches is preponderance of the evidence

Sonos and its amici contend that prosecution laches must be proven by clear and convincing evidence.  *See* Sonos at 33, 41, 60, 68; AIPLA at 19-21.

This Court has ruled to the contrary: it has held that "'preponderance of the evidence' is the appropriate evidentiary standard to establish the facts relating to the laches issue."  *A.C. Aukerman Co. v. R.L. Chaides Const. Co*., 960 F.2d 1020, 1045 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 580 U.S. 328 (2017).

This Court had earlier determined that *inequitable conduct* "requires proof by clear and convincing evidence."  *J.P. Stevens & Co., Inc. v. Lex Tex Ltd*., Inc., 747 F.2d 1553, 1559 (Fed. Cir. 1984); *see also Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) ("Inequitable conduct

resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence.").

*Aukerman* distinguished inequitable conduct and invalidity determinations.  It noted that the "clear and convincing" standard is used "where a particularly important individual interest is at stake such as one's reputation (e.g., fraud or undue influence)," and that the elevated standard is required for invalidity determinations because of § 282's presumption of validity.  960 F.2d at 1045.

*Aukerman* concluded that laches does not implicate these types of concerns:

> [N]either laches nor estoppel attacks a patent's validity. The issue of laches concerns delay by one party and harm to another. Neither of these factors implicates the type of special considerations which typically trigger imposition of the clear and convincing quantum of proof.

*Id.*

*Aukerman* held that laches determinations are subject to the general rule governing civil cases that litigants are "required to prove facts by a preponderance of the evidence," *id.*, and noted

that "to the limited extent courts have touched on this issue, the great weight of authority favors application of the general preponderance of evidence standard [to laches]."  *Id.* (citing cases).

Although *Aukerman* involved the application of laches to a delay in bringing suit—an application of laches since disapproved by *SCA Hygiene*'s determination that § 286's statute of limitations 'fills the gap' with respect to filing suit—*Aukerman*'s reasoning is not confined to that context.  Like other applications of laches, a finding of prosecution laches does not attack a person's reputation, nor is it predicated on a finding of patent invalidity.  *See Aukerman*, 960 F.2d at 1045*.*  Prosecution laches, like other forms of laches, is within the scope of *Aukerman*'s holding—it, too, is primarily "concern[ed] [with] delay by one party and harm to another"—factors that do not "implicate[] the type of special considerations which typically trigger imposition of the clear and convincing quantum of proof."  *Id.*

Finally, the intervening three decades have confirmed *Aukerman*'s observation that the weight of authority favors the application of the preponderance-of-the-evidence standard to laches.  *See Rudolph v. Viking Int'l Resources Co., Inc.*, 84 N.E.3d

1066, 1084 (Ohio App. 2017) ("To successfully invoke the doctrine the party invoking it must establish [the elements of laches] by a preponderance of the evidence."); *Jones v. State*, 445 Md. 324, 339 (Md. 2015) ("The party that asserts laches has the burden of proving laches by a preponderance of the evidence."); *Ex Parte Perez*, 398 S.W.3d 206, 210 n.3 (Tex. Crim. App. 2013) ("The Texas common-law doctrine of laches typically requires proof by a preponderance of the evidence."); *Huff v. Huff*, 895 N.E.2d 407, 410 (Ind. App. 2008) ("The party raising laches has the burden of proof by a preponderance of the evidence."); *LaSalle Nat. Bank v. Dubin Residential Communities Corp*., 337 Ill.App.3d 345, 351 (Ill. App. 2003) ("Like any affirmative defense, the burden is on the defendant to establish laches by a preponderance of the evidence."); *see also SCA Hygiene*, 580 U.S. at 340 ("Patent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation.") (citation omitted).

### III. It was proper for the court to independently decide laches

Sonos and its amici contend that the adjudication or availability of invalidity defenses precluded the district court from deciding the question of prosecution laches, *see* Sonos at 22, 31-32; AIPLA at 17—Sonos contends that it was entitled to try the issue to the jury.  *See* Sonos at 49, 57, 70-71.

Although a patent infringement action is subject to jury trial, some issues in a patent case are "exclusively within the province of the court."  *Markman v. Westview Instruments, Inc*., 517 U.S. 370, 372 (1996).  These issues remain "'for the judge and not the jury'" to decide, even if the court "'may have to resolve subsidiary factual disputes.'"  *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 317 (2019) (*quoting Teva Pharms. USA, Inc. v. Sandoz, Inc*., 574 U.S. 318, 326, 327 (2015)).

"[T]he task of applying an equitable defense is committed to the district court's discretion."  *Core Wireless Licensing S.A.R.L. v. Apple Inc*., 899 F.3d 1356, 1369 (Fed. Cir. 2018).  "As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge and the trial judge's decision is reviewed by this court under the abuse of discretion standard."  *Qualcomm Inc.*

*v. Broadcom Corp*., 548 F.3d 1004, 1019 (Fed. Cir. 2008) (*quoting Aukerman*, 960 F.2d at 1028)).

Aside from the fact that equitable defenses such as laches are assigned to the court for decision, there are several reasons why the actual or potential determination of invalidity defenses in this case did not create res judicata or collateral estoppel against the court's independently deciding laches.

First, even a jury verdict rejecting validity defenses would not have barred the court from deciding laches because claim and issue preclusion do not apply to a subsequent decision that is made under a lower burden of proof:

> Failure to carry a special burden of persuasion characterized as requiring clear and convincing evidence or some like showing does not preclude a later attempt to prove the same issue by a preponderance of the evidence.

18 Fed. Prac. & Proc. Juris. § 4422 (3d ed.); *see also* 50 C.J.S. Judgments § 1001 ("In order for the doctrine of collateral estoppel, or issue preclusion, to apply, under some authority, the burden of proof in the respective actions must be the same.").

It is for this reason that even a jury's acquittal of a defendant in a criminal trial does not preclude the government from later bringing forfeiture proceedings against the same party based on the same conduct.  *See United States v. One Assortment of 89 Firearms*, 465

U.S. 354, 362 (1984) ("It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel."); *Helvering v. Mitchell*, 303 U.S. 391, 397 (1938)  ("The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata."); *see also Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 531 (9th Cir. 1987) ("The borrowers were required in their jury trial to prove their common law fraud claims by clear and convincing evidence. If their burden on the RICO allegations is the lesser standard of proof by a preponderance of the evidence, they should not be foreclosed from litigating their RICO claims.").

Because laches is decided under a preponderance of the evidence standard, independent resolution of the question is not precluded by the adjudication of overlapping or related issues in an invalidity defense, which must be proven by clear and convincing evidence.  *See Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91 (2011).

In addition, because there had not been a final judgment at the time the court decided laches, estoppel could not have precluded the court from deciding laches.  Application of collateral estoppel requires

a judgment that is final and appealable.  *See Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1346 (Fed. Cir. 2022).  In this case, other issues remained to be adjudicated when the court decided laches—there was no final judgment that would invoke collateral estoppel.  *See* Fed. Rule. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) ("[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case.").

At most, the district court's rejection of Google's § 112(a) defense on summary judgment created law of the case, which does not prevent the judge from revising his own earlier decision.  *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 467 (5th Cir. 1999) ("Although, in civil cases, a ruling on a motion for partial summary judgment is the law of the case on the issues decided, that ruling is not immutable and has no res judicata effect."); 18B Fed. Prac. & Proc. Juris. § 4478.1 (3d ed.) ("A judge convinced that an earlier

ruling was wrong has—must have—authority to reconsider and rectify the error.").

The court was charged with deciding prosecution laches. Any actual or potential overlap with the invalidity defenses in the case did not bar the court from deciding laches.

## IV. Section 120 does not create a right to unrestricted continuation practice

Sonos and its amici contend that a right to file unlimited continuations has been "codified" in 35 U.S.C. § 120 and that the USPTO lacks any authority to restrict how many continuations a patentee may file. *See* Sonos at 38; AIPLA at 4, 9; USIJ at 9.

No USPTO rule is at issue in this case; prosecution laches is a common law doctrine that Congress codified via § 282(b)'s recognition of an unenforceability defense. *See Symbol Techs. I*, 277 F.3d at 1366.

Moreover, § 120 does not create an unlimited right to file continuations. Section 120 states the conditions under which a later-filed application is entitled to the benefit of an earlier application's filing date as to commonly disclosed inventions. *See* 35 U.S.C. § 120 ("[A]n application for patent . . . shall have the same effect . . . as though filed on the date of [a] prior application"). Section 120 does *not* state the conditions under which the later application is

28

authorized to be filed, *nor* does it bar the USPTO from applying administrative res judicata to the later application.

This Court's predecessor recognized that § 120 was intended to "express in the statute certain matters which exist in the law today but which had not before been written into the statute," *In re Henriksen*, 399 F.2d 253, 258 (CCPA 1968) (quoting H.R. Rep. No. 1923, 82d Cong., 2d Sess. (1952))—and that "the practice prior to the 1952 Act is thus pertinent [to the meaning of § 120]." *Id.*

An important feature of pre-1952 Patent Office practice was the U.S. Supreme Court's decision in *Overland Motor Co. v. Packard Motor Car Co.*, 274 U.S. 417 (1927). *Overland Motor* held that "it is not incumbent upon the office as a duty to entertain" a "second application for a patent after the first application has been rejected," and that "if [the office] refuses to entertain [such a second application], it has a perfect legal right so to do." *Id.* at 421 (*quoting In re Barratt's Appeal*, 14 App. D.C. 255 (1899)).

With respect to the continuing application that was before the Supreme Court in that case, *Overland Motor* held that "the Commissioner of Patents might have refused to consider" it after rejecting the initial application because "a claim rejected as this was

constitutes res judicata in favor of the Government and against the applicant." *Id.* at 420.

This Court recently recognized the continuing vitality of *Overland Motor*, albeit in the trademark context. It held that "[t]he doctrine of administrative preclusion, similar to res judicata, may preclude repetitive applications in some circumstances." *See In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1352 n.2 (Fed. Cir. 2022) (*citing Overland Motor*, 274 U.S. 417, and *Barratt's Appeal*, 14 App. D.C. 255).

Sonos and its amici make no effort to distinguish *Overland Motor* and its endorsement of administrative preclusion—indeed, they do not even cite the decision.

Finally, it bears emphasis that the same Congress that enacted § 120 also enacted § 282(b)(1)'s codification of the unenforceability defenses. This Court has already determined that the latter provision was intended to preserve the prosecution-laches defense. *See Symbol Techs. I*, 277 F.3d at 1366. A "harmonious" and "symmetrical" construction of the provisions of the 1952 Act, *Nielson*, 607 F.3d at 807, counsels against an interpretation of § 120 that *sub silentio* overrules *Overland Motor* and neuters the very laches defense that another part of the same Act codified.

30

## CONCLUSION

The district court's judgment that Sonos's patent is unenforceable for prosecution laches should be affirmed.

Respectfully submitted,

*/s/ Joseph Matal*

Joseph Matal
CLEAR IP, LLC
800 17th St., NW
Suite 500
Washington, DC 20006
(202) 654-4500
Joseph.Matal@clearpatents.com

*Counsel for Amicus Curiae*

Dated:  May 31, 2024

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for amicus curiae certifies that this brief:

(1)  complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) and Federal Circuit Rule 29(b) because it contains 6,000 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(2)  complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in the Verdana font in a size equivalent to 14 points or larger.

Dated:  May 31, 2024                    _/s/ Joseph Matal____