NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GOOGLE LLC,**
*Plaintiff-Appellee*

v.

**SONOS, INC.,**
*Defendant-Appellant*

---

2024-1097

---

Appeal from the United States District Court for the Northern District of California in Nos. 3:20-cv-06754-WHA, 3:21-cv-07559-WHA, Judge William H. Alsup.

---

Decided: August 28, 2025

---

DAN L. BAGATELL, Perkins Coie LLP, Hanover, NH, argued for plaintiff-appellee. Also represented by ANDREW DUFRESNE, Madison, WI; NATHAN K. KELLEY, Washington, DC; TARA LAUREN KURTIS, Chicago, IL; MELISSA J. BAILY, IMAN LORDGOOEI, SEAN S. PAK, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA.

E. JOSHUA ROSENKRANZ, Orrick, Herrington & Sutcliffe LLP, New York, NY, argued for defendant-appellant. Also represented by JOSEPH RAYMOND KOLKER; ALYSSA


Margaret Caridis, Nicholas Gonzalez, Los Angeles, CA; Elizabeth Moulton, Clement Roberts, Sachi Schuricht, San Francisco, CA; Lauren Weber, Seattle, WA; George I. Lee, Cole Bradley Richter, Rory Patrick Shea, John Dan Smith, III, Sean Michael Sullivan, Lee Sullivan Shea & Smith LLP, Chicago, IL.

---

Before LOURIE and PROST, *Circuit Judges*, and BUMB, *Chief District Judge*.[1]

LOURIE, *Circuit Judge*.

Sonos, Inc. appeals from the final judgment of the U.S. District Court for the Northern District of California holding (1) claims 1, 2, 4, 6, and 8 of U.S. Patent 10,469,966 ("the '966 patent") invalid and the '966 patent unenforceable; (2) claim 1 of U.S. Patent 10,848,885 ("the '885 patent") invalid and the '885 patent unenforceable; and (3) claims 1, 2, 4, 9, 11–13, and 16 of U.S. Patent 10,779,033 ("the '033 patent") invalid.[2] J.A. 107–08 (Amended Final Judgment).

For the following reasons, we *reverse-in-part* and *affirm-in-part*.

---

[1] Honorable Renée Marie Bumb, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

[2] Sonos further appeals the district court's judgment holding claim 13 of U.S. Patent 9,967,615 invalid. We have since affirmed the invalidity of that claim in a separate decision, *see Sonos, Inc. v. Google LLC*, No. 2023-2040, 2025 WL 1703730 (Fed. Cir. June 18, 2025), so Sonos's appeal as to that claim is moot. *See* ECF No. 99.

## BACKGROUND

### I

Sonos owns the '966 and '885 patents (collectively, "the Zone Scene patents"), and the '033 patent ("the Direct Control patent"), which are all generally directed to controlling various aspects of media playback systems.

#### A. The Zone Scene Patents

The Zone Scene patents are directed to creating and saving predefined groups of "zone players," *e.g.*, speakers, into so-called "zone scenes" to play synchronous audio. *See* '885 patent, col. 2 ll. 36–45.[3] The Zone Scene patents were each filed in April 2019 and claim priority from a September 2006 provisional application and a September 2007 nonprovisional application. *Id.* col. 1 ll. 17–24.

Independent claim 1 of the '885 patent, which is representative of the asserted claims of the Zone Scene patents, reads:

> 1. A first zone player comprising:
>
> a network interface . . . ;
>
> one or more processors;
>
> a non-transitory computer-readable medium; and
>
> program instructions . . . that, when executed by the one or more processors, cause the first zone player to perform functions comprising:
>
>> while operating . . . in a networked media playback system comprising the first zone player and at least two other zone players;

---

[3] Citations to the Zone Scene patents are made with reference to the '885 patent, which shares a specification with the '966 patent.

> (i) receiving . . . a first indication *that the first zone player has been added to a first zone scene comprising a first predefined grouping of zone players including the first zone player and a second zone player . . .* ; and
>
> (ii) receiving . . . a second indication *that the first zone player has been added to a second zone scene comprising a second predefined grouping of zone players including at least the first zone player and a third zone player . . . wherein the second zone player is different than the third zone player . . . .*

*Id.* col. 11 l. 37–col. 12 l. 22 (emphases added). In short, the claims recite the creation of "overlapping" zone scenes in which any given speaker—the claimed "first zone player"—can simultaneously belong to two different zone scenes.

In August 2019, during prosecution of the Zone Scene patents, Sonos amended the specification's description of Figure 5B, depicting a user interface with a list of the available zones that can be grouped to form a zone scene, to add the following: "The list of zones in the user interface 520 includes ALL the zones in the system, including the zones that are already grouped." *Id.* col. 10 ll. 15–17; *see* J.A. 8685. The issues raised in this appeal with respect to the Zone Scene patents relate to their disclosure of the "overlapping" nature of the claimed zone scenes.

## B. The Direct Control Patent

The Direct Control patent is directed to the use of a "control device," *e.g.*, a smartphone, to transfer playback responsibility to a "playback device," *e.g.*, a speaker, through a mobile app. *See* '033 patent, col. 2 ll. 20–29. The speaker is then responsible for playing the selected media

(*e.g.*, a music playlist), while features of that playback, such as the volume or song selection, can be controlled by the smartphone.

Independent claim 1, which is representative of the asserted claims of the Direct Control patent, reads:

> 1. A computing device comprising:
>
> at least one processor;
>
> a non-transitory computer-readable medium; and
>
> program instructions . . . that, when executed by the at least one processor, cause the computing device to perform functions comprising:
>
>> operating in a first mode in which the computing device is configured for playback of *a remote playback queue* provided by a cloud-based computing system associated with a cloud-based media service;
>>
>> while operative in the first mode, *displaying a representation of one or more playback devices* in a playback system . . . ;
>>
>> while displaying the representation of the one or more playback devices, *receiving user input indicating a selection of at least one given playback device* . . . ;
>>
>> based on receiving the user input, transmitting an instruction for the at least one given playback device to take over responsibility for playback of the remote playback queue from the computing device . . . .

*Id.* col. 17 ll. 32–56 (emphases added). The issues on appeal with respect to the Direct Control patent relate to the claimed "remote playback queue" and the so-called "device picker" limitation, *i.e.*, the recited "displaying a representation of one or more playback devices" and "receiving user

input indicating a selection of the at least one given playback device."

II

Google LLC sued Sonos for declaratory judgment of noninfringement in the U.S. District Court for the Northern District of California. One day later, Sonos sued Google for infringement in the U.S. District Court for the Western District of Texas. A panel of this court granted Google's petition for a writ of mandamus and directed the Texas court to transfer Sonos's case. The cases were thereafter consolidated in the California court. *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *1 (Fed. Cir. Sept. 27, 2021).

A

Early in the proceedings, Sonos moved for summary judgment of infringement of claim 1 of the '885 patent, J.A. 4545–73, and Google cross-moved for summary judgment of noninfringement of that claim, J.A. 4883–87. In opposition to Sonos's motion, Google argued, *inter alia*, that there could be no infringement of claim 1 because that claim lacked adequate written description of overlapping zone scenes. J.A. 4913–20. But Google did not independently move for summary judgment of invalidity of that claim or even argue in its own cross-motion that the invalidity of the claim precluded infringement.

The district court granted summary judgment of infringement to Sonos and denied Google's cross-motion. *See Google LLC v. Sonos, Inc.*, No. 20-cv-6754, 2022 WL 2870527, at *9 (N.D. Cal. July 21, 2022) ("*Zone Scene Decision*"). In addressing Google's written description arguments, the district court specifically relied upon Figure 5B of the '885 patent and its accompanying disclosure that the list of available zones "includes ALL the zones in the system, *including the zones that are already grouped.*" *Id.* at *8 (quoting '885 patent, col. 10 ll. 16–17). Thus, the district

court noted that the Zone Scene patents "adequately convey that a zone player can be added to multiple zone scenes." *Id.* Thereafter, Google abandoned its written description challenges to the Zone Scene patents. J.A. 6993.

As the case neared trial, Google moved for summary judgment of invalidity of the Direct Control patent. J.A. 6325–39. Google argued that a version of Google's own YouTube Remote ("YTR2"), in view of its patent directed to that remote, U.S. Patent 9,490,998 ("the '998 patent"), would have rendered obvious the asserted claims of the Direct Control patent at the time of the alleged invention. The district court agreed and granted Google's motion, removing the Direct Control patent from the scope of the trial. *Sonos, Inc. v. Google LLC*, No. 20-cv-6754, 2023 WL 2962400 (N.D. Cal. Apr. 13, 2023) ("*Direct Control Decision*").

The case proceeded to trial on Google's alleged infringement of the asserted claims of the Zone Scene patents, as well as on the validity of those claims and damages. The jury found that Google had failed to prove that any of the asserted claims are invalid, that Google's redesign product[4] infringes claim 1 of the '885 patent, and that none of the accused products infringes the asserted claims of the '966 patent. J.A. 10347–49. The jury awarded Sonos just over $32.5 million for Google's infringement. J.A. 10350.

B

During trial, the district court began to question the soundness of its prior rejection of Google's written description challenge to the overlapping zone scenes as claimed in the Zone Scene patents and ordered additional briefing.

---

[4] After the district court's grant of summary judgment of infringement of claim 1 of the '885 patent, Google developed a redesign product that it claimed no longer infringed the Zone Scene patents. *See* J.A. 6344–48.

*See* J.A. 20660–62.  The court deferred its ruling on that issue until after trial, when it also held a hearing on the parties' post-trial motions and Google's affirmative equitable defenses.

In its post-trial decision, the district court held the Zone Scene patents unenforceable due to prosecution laches.  *See Sonos, Inc. v. Google LLC*, No. 20-cv-6754, 2023 WL 6542320, at *30 (N.D. Cal. Oct. 6, 2023) ("*Post-Trial Decision*").  It found that Google had shown that Sonos "was guilty of unreasonable and inexcusable delay in its prosecution of" the Zone Scene patents because Sonos filed the provisional application from which those patents claim priority in September 2006, but did not seek to claim overlapping zone scenes until thirteen years later, in April 2019.  *Id.* at *16.  The court therefore determined that "[t]he magnitude of [Sonos's] delay in presenting [its] claims for prosecution suffice[d] to invoke prosecution laches."  *Id.* at *17 (second and third alteration in original) (quoting *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1367 (Fed. Cir. 2021)).  The court further determined that Google had shown that it suffered prejudice as a result of Sonos's delay, explaining that "Google began investing in the accused products by at least 2015, when it released its first products that practiced the invention."  *Id.* at *18.  According to the court, "[t]here [was] no question that Google worked on, invested in, and used the claimed technology during the period of Sonos's delay."  *Id.*  The court therefore held the Zone Scene patents unenforceable against Google.

Despite that conclusion, the court proceeded to take a "deeper dive" into other issues, *id.* at *19, including whether the Zone Scene patents' 2006 and 2007 priority applications contained sufficient written description to support the claimed overlapping zone scenes or whether Sonos's 2019 amendment to include additional disclosure directed to that feature constituted new matter.  *See id.* at *20–30.  Ultimately, the court found that the amendment was new matter that was not supported by the disclosure

in the original specification, such that the Zone Scene patents had a priority date of August 23, 2019, the date of the amendment to the specification. *Id.* at *27. The district court therefore held the asserted claims invalid as "anticipated by the accused products themselves,"[5] and vacated the portion of its earlier summary judgment decision, *see Zone Scene Decision*, at *8–9, that addressed written description. *Post-Trial Decision*, at *30. Judgment was entered accordingly. J.A. 107–08.

Sonos timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Sonos raises three challenges on appeal. First, it argues that the district court erred in granting judgment of invalidity of the Zone Scene patents. Second, it argues that the district court abused its discretion in holding the Zone Scene patents unenforceable due to prosecution laches. And third, it argues that the district court erred in granting summary judgment of invalidity of the Direct Control patent. We address those arguments in turn.

### I.  INVALIDITY

#### A

Before reaching the merits of Sonos's invalidity challenge, we address two procedural irregularities of the district court's decision that impact the framing of our analysis.

---

[5]  We presume by stating that the "accused products themselves" anticipated the asserted claims, the district court meant that the *public use* or *sale* of those products before the effective filing date of the Zone Scene patents rendered them prior art. *See* 35 U.S.C. § 102(a)(1).

First, we observe that the court characterized its invalidity determination based on the asserted new matter as one arising under 35 U.S.C. § 102 on the theory that "[t]hat which infringes if later[,] anticipates if before." *See Post-Trial Decision*, at \*27. Because all of the accused Google's products had been adjudicated to infringe the '885 patent, and because the district court found that the Zone Scene patents were not entitled to a priority date before 2019, it held the asserted claims of those patents invalid as anticipated by the accused products. However, because the Zone Scene patents are continuation applications of the priority application—not continuations-in-part ("CIPs")—we will address the new matter challenge through the lens of written description. *Compare Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1538–39 (Fed. Cir. 1997) ("The question raised here is whether the claims added by the preliminary amendment to the 1992 continuation application find adequate support in the 1990 application sufficient to meet the description requirement of section 112[.]"), *with Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1303 (Fed. Cir. 1999) ("Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application. Thus, the decision on the proper priority date . . . for subject matter claimed in a CIP application depends on when that subject matter first appeared in the patent disclosures."). Although this may be a distinction without a difference, for clarity of this opinion we treat the district court's judgment as one arising under § 112, not § 102.[6]

---

[6] Further, it appears that, in light of the jury's verdict that none of the accused Google products infringes the '966 patent, *see* J.A. 10349, the district court's logic of "that which infringes if later, anticipates if earlier" would not hold for the claims of that patent.

Second, we note the unusual posture of the district court's post-trial treatment of the written description issue. There is no dispute that the issue of written description was not tried to a jury. And Google never moved for summary judgment of invalidity of the Zone Scene patents under § 112; rather, those arguments were raised solely in opposition to Sonos's motion for summary judgment of infringement. Although it may seem prudent to remand this question of fact to be tried in the first instance by the factfinder, both parties argue that we can review the merits of the district court's post-trial decision without such a remand, by employing summary judgment standards to guide our review. *See* Sonos Br. 68 ("Reversal is required if this Court is persuaded that no reasonable factfinder could conclude that the priority date was later than 2007."); Oral Arg. 24:38–25:05, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=24-1097_07102025.mp3 (Google's counsel acknowledging that this court can decide, based on the record, whether there is a genuine dispute of material fact as to written description). And under the unusual circumstances here, we agree.

As the district court itself noted in its post-trial decision, it has the authority to revise, at any time prior to judgment, "any order or other decision, however designated, that adjudicates fewer than all the claims." Fed. R. Civ. P. 54(b); *see Post-Trial Decision*, at *30 (citing Rule 54(b)). What is more, Rule 56(f) permits a district court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," so long as the court provides the parties with "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(3). Those two rules, taken together under the circumstances of this case, gave the district court authority to consider under summary judgment standards the adequacy of the Zone Scene patents' disclosure, despite Google's failure to move for summary judgment on that issue.

Accordingly, we construe the district court's post-trial decision as a *sua sponte* summary judgment decision under Rule 56(f), revised as permitted by Rule 54(b), holding that the Zone Scene patents are invalid for lack of written description. With that framing of the issue, we now turn to the merits.

B

We review a district court's grant of summary judgment of invalidity for lack of written description *de novo*. *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011); *see PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008) ("Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party."). To determine whether the written description requirement is met, we consider "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). On this record, we conclude that Google has failed to establish a genuine dispute of material fact that the Zone Scene patents lack written description of the claimed overlapping zone scene functionality.

We reach our conclusion without the need to determine whether the 2019 amendment to the disclosure is or is not new matter. Rather, we look to the following disclosure, which accompanies Figures 3A and 3B and is dispositive:

> Using what is referred to herein as a theme or a zone scene, zones can be configured in a particular scene (e.g., morning, afternoon, or garden) . . . .
>
> For instance, *a "Morning" zone scene/configuration command would link the Bedroom, Den and Dining Room* together in one action . . . . FIG. 3A provides

> an illustration of one zone scene, where . . . the column on the right shows the effects of grouping the zones to make a group of 3 zones named after "Morning."
>
> *Expanding this idea further,* a Zone Scene can be set to create *multiple sets of linked zones.* For example, a scene creates 3 separate groups of zones, the downstairs zones would be linked together, the upstairs zones would be linked together in their own group, and the outside zones (in this case the patio) would move into a group of its own.
>
> In one embodiment as shown in FIG. 3B, a user defines *multiple groups to be gathered at the same time.* For example: *an "Evening Scene" is desired to link the following zones*:
>
> > Group 1
> > *Bedroom*
> > *Den*
> > *Dining Room*
> >
> > Group 2
> > Garage
> > Garden
>
> where Bathroom, Family Room and Foyer should be separated from any group if they were part of a group before the Zone Scene was invoked.

'885 patent, col. 8 l. 47–col. 9 l. 14 (emphases added). That disclosure, which describes a "Morning Scene" containing each of the Bedroom, Den, and Dining Room, as well as an "Evening Scene" containing those same rooms, in addition to the Garage and Garden, plainly provides adequate written description for overlapping zone scenes, where each of the Bedroom, Den, and Dining Room simultaneously belong to two different zone scenes. *See* J.A. 5210–11 (Sonos's expert report citing this disclosure, among others, as reasonably conveying possession of overlapping zone

scenes). Moreover, there is no question that Sonos had described and had possession of that invention at least as early as 2007, as the cited disclosure appeared verbatim in the nonprovisional application, filed that year, from which the Zone Scene patents claim priority. *See* J.A. 8345–46.

Google argues that the foregoing disclosure does not "depict two zone scenes in the same system at the same time," but rather "*alternative* embodiments" that the specification never describes as "concurrent." Google Br. 32. We disagree. Figures 3A and 3B are complimentary, not alternative. Not only are they identified by nomenclature suggesting that they are related (*i.e.*, 3A and 3B), which on its own may not be dispositive, but the description itself supports that they form a cohesive idea. Directly after introducing the "Morning Scene," depicted in Figure 3A, the specification states, "[e]*xpanding this idea further*, a Zone Scene can be set to create *multiple sets of linked zones*," by linking the "Morning Scene," or "Group 1," a set of linked zones containing the Bedroom, Den, and Dining Room, with "Group 2," a set of linked zones containing the Garage and Garden. *See* '885 patent, col. 8 l. 52–col. 9 l. 11 (emphases added). No reasonable factfinder could conclude that that language, which clearly conveys Figure 3B's further expansion of the idea of Figure 3A, and uses the same zone designations—Bedroom, Den, and Dining Room—is directed to an entirely separate and "alternative" embodiment.

Google further challenges Sonos's expert testimony as "conclusory" and "self-serving," Google Br. 32, but cites no expert testimony of its own. It therefore has failed to establish any genuine dispute of material fact as to whether a person of ordinary skill in the art would reasonably believe that Sonos had possession of overlapping zone scenes in at least 2007. *See Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1375 (Fed. Cir. 2024) ("[T]he disclosure must be considered as a whole, as the person of

ordinary skill in the art would read it, to determine if it *reasonably* conveys possession.").

For at least the foregoing reasons, we hold that the district court erred in entering judgment that the asserted claims of the Zone Scene patents are invalid as lacking written description of overlapping zone scenes.

## II. PROSECUTION LACHES

In addition to holding the asserted claims invalid, the district court entered judgment that the Zone Scene patents are unenforceable against Google under the equitable defense of prosecution laches. That doctrine "may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (internal quotation marks and citation omitted). "We review a district court's determination of prosecution laches for abuse of discretion, but we review the legal standard applied by the district court *de novo*." *Id.* at 728–29 (internal citations omitted).

To succeed in its defense, Google must establish that Sonos's delay in prosecution was unreasonable and inexcusable under the totality of circumstances, and that Google suffered prejudice attributable to that delay. *Hyatt v. Hirshfeld*, 998 F.3d 1347, 1362 (Fed. Cir. 2021). We limit our discussion to the second element—prejudice—which we conclude as a matter of law that Google has not established. To prove prejudice, Google "must show evidence of intervening rights," *i.e.*, that either Google or others "invested in, worked on, or used the claimed technology during the period of delay." *Cancer Rsch.*, 625 F.3d at 729; *see Woodbridge v. United States*, 263 U.S. 50, 52–53 (1923).

In its post-trial briefing, the sole argument Google made with respect to prejudice was that it "began investing

in its products by at least 2015," such that Sonos's delay in not pursuing claims to the overlapping zone scene functionality until the Zone Scene patents were filed in 2019 caused Google to suffer prejudice. *See* J.A. 11053. But Google presented no evidence—testimony or otherwise—to support its assertion that its investment in those products actually began in 2015,[7] or that it was caught unawares that Sonos may have already invented the adjudicated-infringing functionality when making those investments. Without any evidence, Google cannot meet its burden of establishing prejudice.

Moreover, even if we accept as fact that Google's investment began in 2014 or 2015, it cannot establish prejudice on this record. Although Sonos submitted a nonpublication request with the filing of its 2007 nonprovisional application (an entirely lawful request, *see* 35 U.S.C. § 122(b)(2)(B)(i)), that application was published when it issued as U.S. Patent 8,483,853 on July 9, 2013. *See Post-Trial Decision*, at *9. As we have concluded above, no reasonable factfinder could conclude that the specification—which was published in 2013, before any of Google's asserted investments—does not reasonably disclose overlapping zone scenes. Google cannot be prejudiced by incorporating into its products a feature that was publicly disclosed in a patent application prior to its investment. *Cf. Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 (Fed. Cir. 2004) ("[I]t is not improper for an applicant to broaden his claims during prosecution in order to encompass a competitor's products, as long as the disclosure supports the broadened claims."); *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1334 (Fed. Cir. 2019) (explaining that, although subject matter disclosed but not claimed is

---

[7] On appeal, Google asserts, again without any record citation, that it began developing its products in 2014. Google Br. 59.

generally dedicated to the public, there is an exception for subject matter "claimed in a continuation or other application").

At bottom, Google presents no evidence that it suffered prejudice attributable to Sonos's delay in claiming, but not disclosing, overlapping zone scenes. The district court erred in concluding otherwise, and therefore abused its discretion in holding the Zone Scene patents unenforceable for prosecution laches.

### III

Finally, we turn to the district court's grant of summary judgment that the asserted claims of the Direct Control patent are invalid as obvious over YTR2, in view of the '998 patent. Sonos argues that the district court improperly resolved genuine disputes of material fact as to whether the combination of those references would have rendered obvious the claimed "remote playback queue" and "device picker" limitations. We disagree.

Beginning with the remote playback queue, it is undisputed that YTR2 includes a "party mode" in which two or more users can manage a queue of YouTube videos and transfer playback of those videos from two or more mobile devices to one or more screens. *See Direct Control Decision*, at \*6. The issue is whether that shared party queue is stored for playback at the remote server or whether it is stored locally, on each of the screens. We agree with the district court that there is no genuine dispute of material fact that YTR2 stores the playback queue remotely at the server. *See id.* at \*7–8. Indeed, Sonos appears to acknowledge that the remote server contains a copy of the playback queue, which it receives from the users' mobile devices and then sends to one or more screens. Sonos Br. 77–78. Sonos instead argues that the YTR2 does not permit playback of that remote queue, but only playback of the local queue stored on each screen. *Id.* at 78. Sonos demands more of the claim than is required. As Google

notes, the claims do not require each user device to continually access the remote server, Google Br. 67, nor do they require the computing device to play back *from* the remote queue, Sonos Br. 78. All the claims require is a computing device "configured for playback of a remote playback queue *provided by* a cloud-based computing system," '033 patent, col. 17 l. 39–41, and there is no dispute that the remote server sends, *i.e.*, provides, a copy of the playback queue it receives from the users' mobile devices to the one or more screens for playback. *See* Sonos Br. 77–78.

We further agree with the district court that there is no genuine dispute of material fact that the combination of YTR2 and the '998 patent would have rendered obvious the "device picker" limitation at the time of the alleged invention. That limitation requires the computing device to "display[] a representation of one or more playback devices in a media playback system" and "receiv[e] user input indicating a selection of at least one given playback device from the one or more playback devices." '033 patent, col. 17 ll. 43–44, 50–52. As the district court noted, the '998 patent discloses a remote control application that can be used to "initiate contact with a server . . . for pairing remote control 75 to one or more controlled devices," and that "[i]n some examples, the user may also utilize the remote control application of remote control 75 to *select one of more previously paired controlled devices*." '998 patent, col. 10 l. 63–col. 11 l. 3 (emphasis added). We agree with the district court that the only reasonable interpretation of that disclosure is that the remote-control application of the '998 patent allows a user to select a device from a list of previously paired controlled devices for pairing. Sonos's attempt to create a *genuine* dispute of material fact as to that disclosure is unpersuasive.

Accordingly, we agree with the district court's grant of summary judgment of invalidity of the asserted claims of the Direct Control patent.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *reverse* the district court's judgment that claims 1, 2, 4, 6, and 8 of the '966 patent and claim 1 of the '885 patent are invalid for lack of written description and that the '966 and '885 patents are unenforceable under the doctrine of prosecution laches. We *affirm* the district court's judgment that claims 1, 2, 4, 9, 11–13, and 16 of the '033 patent are invalid as obvious. Upon receipt of the mandate, the district court is instructed to consider, in the first instance and if still contested, any remaining motions mooted by its judgment, *see Post-Trial Decision*, at *30.

**REVERSED-IN-PART AND AFFIRMED-IN-PART**

## COSTS

The parties shall bear their own costs.